Debra Ann JOHNSON (Pesta),
Respondent,

v.

Charles Evert MOBERG, Defendant and
Third Party Plaintiff, Respondent,

v.

Jerry BETSINGER and Russell Betsinger,
individually and d.b.a. Horseshoe Lake
Ballroom and Supper Club, Third Party
Defendants, Appellants.

No. C0–82–181.

Supreme Court of Minnesota.

June 3, 1983.

Foster, Waldeck, Lind & Humphrey, Peter E. Lind, Minneapolis, for appellants.

Frauenshuh & Fahlberg Law Firm and Ronald R. Frauenshuh, Sr., Paynesville, for respondent Johnson.

Sahr, Kunert & Tambornino and Roger T. Sahr, Minneapolis, for respondent Moberg.

SIMONETT, Justice.

This is an appeal from an order of the Todd County District Court denying a motion for judgment notwithstanding the verdict or for a new trial on the issue of liability, based upon the contention that the trial court erroneously ruled as to the standard for the negligent sale of 3.2 beer and on the failure to disclose an oral settlement agreement to the court and counsel.

Early on the morning of February 25, 1979, a vehicle operated by defendant Charles Moberg (Moberg) crossed the centerline and collided with the vehicle operated by plaintiff Debra Johnson Pesta (Pesta). Prior to the accident, both Moberg and Pesta had spent the evening at the Horseshoe Lake Ballroom and Supper Club (Ballroom).

Moberg testified that he had consumed approximately three bottles of strong beer while moving an ice fishing house between

2 and 5 p.m. on February 24, 1979. Moberg then went home and cleaned up in preparation for going out that evening. At approximately 7 p.m. Moberg went out to pick up four friends. They purchased a case of strong beer and two six-packs at the Long Prairie Liquor Store, drove around for about an hour, and then pulled into the parking lot of the Ballroom. Moberg had four or five bottles of beer while he and his companions were parked in the Ballroom parking lot. At about 10 p.m. they went into the Ballroom.

While in the Ballroom, Moberg and his friends played foosball, shot pool, danced, and drank 3.2 beer. They remained in the Ballroom until it closed at approximately 1 a.m. Moberg estimated that he consumed five or six bottles of 3.2 beer while in the Ballroom.

Moberg left the Ballroom shortly after 1 a.m. and drove his companions home. After dropping them all off, he realized that he had lost a glove and decided to return to the Ballroom in order to look for it. While returning to the Ballroom, Moberg almost hit a squad car manned by two highway patrol officers. The officers radioed another squad car which was behind them to be alert for Moberg's vehicle. The officers in the trailing squad car observed Moberg's vehicle swerving down the highway. They saw Moberg cross the centerline and strike the vehicle Pesta was driving head-on.

Plaintiff Pesta brought this action against Moberg alleging negligent operation of his vehicle. Moberg then brought a third-party action against appellants Jerry Betsinger and Russell Betsinger, individually and doing business as the Horseshoe Lake Ballroom and Supper Club (Betsingers), alleging the negligent sale of 3.2 beer to Moberg.

Highway Patrol Officer Howard Nordine testified that when he observed Moberg shortly after the accident he was either in a state of shock or intoxicated. Highway Patrol Officer David Asmus testified that Mo-

berg was obviously intoxicated when he observed him at the scene of the accident. A blood-alcohol test on a blood sample taken from Moberg at the scene of the accident established a blood-alcohol reading of .23 percent.

The case was submitted to a jury upon a special verdict. Prior to submission of the special verdict questions to the jury, counsel for all parties stipulated that plaintiff Pesta was not negligent. In addition, counsel stipulated that defendants Moberg and the Betsingers were negligent and that their negligence was a direct cause of the accident. Counsel for the Betsingers, however, agreed to an admission of negligence and causation only after an adverse ruling by the trial court that the standard of liability for a 3.2 beer vendor was that of the sale of 3.2 beer to an "intoxicated" person rather than an "obviously intoxicated" person, thus preserving this issue for appeal. The jury returned a verdict finding Betsingers 45% liable, Moberg 55% liable, and damages of $30,000. The Betsingers appeal.

The issues are: (1) Whether the trial court erred in instructing the jury regarding the duties of a 3.2 beer vendor in the sale of 3.2 beer; and (2) whether the nondisclosure of a settlement agreement made during trial was prejudicial error.

1. Again, a trial court of this state was confronted with the confusion generated by Minn.Stat. ch. 340. Appellants contend that the trial court committed reversible error in instructing the jury on the standard of care to which a vendor must adhere in the sale of 3.2 beer. In *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973), this court recognized a common-law cause of action against commercial vendors of statutorily defined nonintoxicating malt beverages who, in violation of statutory prohibition, furnish or sell to one whose tortious conduct ultimately causes personal injury or property damage. In *Trail* the court held that a vendor's violation of Minn.Stat. § 340.73, subd. 1 (1971),[1] constituted negli-

---

1. Minn.Stat. § 340.73, subd. 1 (1971), provided:

It shall be unlawful for any person, except a licensed pharmacist to sell, give, barter,

gence per se. 298 Minn. at 115, 213 N.W.2d 626.

In the case at bar the parties disagree over whether a vendor of 3.2 beer should be liable for the foreseeable consequences of a sale of 3.2 beer to an "intoxicated" person under Minn.Stat. § 340.73, subd. 1 (1978), or an "obviously intoxicated" person under Minn.Stat. § 340.14, subd. 1a (1982), the statute regulating the sale of "intoxicating liquors." [2]

The problem concerning the standard for liability of a 3.2 beer vendor is that chapter 340 creates two classes of liquor vendors: vendors of "intoxicating liquor" and vendors of 3.2 beer. "Intoxicating liquor" vendors are subject to liability under Minn. Stat. § 340.14, subd. 1a, if they sell liquor to an "obviously intoxicated" person. Prior to 1982 vendors of 3.2 beer were subject to liability under Minn.Stat. § 340.73, subd. 1, if they sold 3.2 beer to an "intoxicated" person.

■ In *Wegan v. Village of Lexington,* 309 N.W.2d 273 (Minn.1981), and *Jones v. Fisher,* 309 N.W.2d 726 (Minn.1981), this court made it clear that it was a violation of the equal protection clause of the United States and Minnesota Constitutions to treat vendors of 3.2 beer as a different class than vendors of intoxicating liquor. As in *Wegan* and *Jones,* the classifications in the case at bar are not genuine or relevant to the purpose of the law. The distinctions which separate those included within the classification from those excluded are manifestly arbitrary and fanciful. Again we find no rational basis for distinguishing between persons injured by those intoxicated from drinking 3.2 beer and those intoxicated as a result of drinking stronger liquor. There is no reason to have a less restrictive standard (sale to an "intoxicated" person) for determining liability of a 3.2 beer vendor than for the vendor of intoxicating liquor (sale to an "obviously intoxicated" person).

■ The standard should and must be the same for vendors of 3.2 beer and vendors of intoxicating liquor. The "obviously intoxicated" standard is hereby adopted as consistent with recent legislative enactments and past decisions of this court. The 1982 Minnesota Legislature amended Minn. Stat. § 340.73, subd. 1, to make it unlawful for any person to sell malt liquors or intoxicating liquors to an "obviously intoxicated" person. The standard is, thus, now the same as in Minn.Stat. § 340.14, subd. 1a. We hold, therefore, that the jury was instructed under a prejudicially erroneous standard and that a new trial is required. Since the error went only to liability, the new trial is limited to the liability issues.

2. Appellants also contend that the non-disclosure of a settlement agreement between plaintiff Pesta and defendant driver Moberg made shortly before final arguments was prejudicial error. Since appellants have asked only for a new trial on liability, which we have already granted for the erroneous dramshop liability instruction, we need not reach this second issue. Since, however, the question of the settlement nondisclosure may come up again in the new trial on liability, we will briefly discuss it.

Minutes before closing arguments were to begin, counsel for plaintiff and defendant Moberg agreed orally as follows: (1) defendant Moberg guaranteed plaintiff a

---

furnish, deliver, or dispose of, in any manner, either directly or indirectly, any spirituous, vinous, malt, or fermented liquors in any quantity, for any purpose, whatever, to any minor person, or to any intoxicated person, or to any public prostitute.
In 1982 the legislature amended Minn.Stat. § 340.73, subd. 1 (1982), to read:
    It is unlawful for any person, except a licensed pharmacist to sell, give, barter, furnish, deliver, or dispose of, in any manner, either directly or indirectly, any intoxicating liquors or non-intoxicating malt liquors in

any quantity, for any purpose, to any person under the age of 19 years, or to any *obviously* intoxicated person.
1982 Minn.Laws ch. 528, § 5 (emphasis added).

**2.** Minn.Stat. § 340.14, subd. 1a (1982), provides:
    No intoxicating liquor shall be sold, furnished, or delivered for any purpose to any minor or to any person obviously intoxicated or to any of the persons to whom sale is prohibited by statute.

minimum recovery of $25,000; (2) plaintiff promised defendant Moberg that his maximum exposure to plaintiff was $25,000; and also (3) that if the verdict required defendant Moberg to pay less than $25,000, Moberg would pay only the lesser amount.

Settlement agreements such as this are becoming increasingly prevalent. Termed "Mary Carter" agreements from their first appearance in *Booth v. Mary Carter Paint Co.,* 202 So.2d 8 (Fla.1967), they have been described by the Florida court in *Ward v. Ochoa,* 284 So.2d 385, 387 (Fla.1973), as "basically a contract by which one co-defendant secretly agrees with the plaintiff that, if such defendant will proceed to defend himself in court, his own maximum liability will be diminished proportionately by increasing the liability of the other co-defendants."

We hold that "Mary Carter" settlement agreements must be disclosed, and disclosed promptly, to the trial court and to the other litigants. This kind of settlement can affect the motivation of the parties and, indeed, the credibility of witnesses, and only by bringing these settlements into the open can a trial proceed in a fair and proper adversarial setting. The overwhelming majority of courts that have considered the issue have required that the trier of fact be apprised promptly of any such agreements. *See, e.g., Sequoia Manufacturing Co. v. Halec Construction Co.,* 117 Ariz. 11, 24, 570 P.2d 782, 794 (Ariz.Ct.App.1977); *Pellet v. Sonotone Corp.,* 26 Cal.2d 705, 713, 160 P.2d 783, 788 (1945); *Ward v. Ochoa,* 284 So.2d 385, 388 (Fla.1973); *Gatto v. Walgreen,* 61 Ill.2d 513, 523, 337 N.E.2d 23, 29 (1975), *cert. denied,* 425 U.S. 936, 96 S.Ct. 1669, 48 L.Ed.2d 178 (1976); *Burkett v. Crulo Trucking Co.,* 171 Ind.App. 166, 355 N.E.2d 253 (1976); *General Motors Corp. v. Lahocki,* 286 Md. 714, 410 A.2d 1039 (1980); *Grillo v. Burke's Paint Co.,* 275 Or. 421, 427, 551 P.2d 449, 453 (1976); *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.1977).

The failure of plaintiff and defendant Moberg to disclose their settlement agreement as soon as it was made constitut-ed misconduct and an irregularity in the trial proceedings within the meaning of Minn.R.Civ.P. 59.01(1) and (2), but we agree with the trial court's post-trial ruling that, in this instance, the irregularity was harmless.

Here the agreement was not made until after the parties had rested, so it had no influence on the testimony at trial. Nor did the agreement taint the final arguments. Counsel for defendant-appellant Ballroom argued that the damages were $25,000, only $5,000 less than the jury awarded, and it is significant that appellants here do not want a new trial on damages. Defendant Moberg's counsel argued that Moberg was 10% at fault and the Ballroom 90% and did not argue the amount of damages. The defendant Ballroom's counsel argued that co-defendant Moberg was 100% at fault. Plaintiff's counsel argued that the defendants were equally at fault. The trial court, in the best position to monitor the trial, was of the opinion that the final arguments would have been the same with or without the settlement agreement and that the non-disclosure was not prejudicial. We conclude that the trial court did not abuse its discretion in finding no prejudice resulted here.

The case is remanded, therefore, for a new trial on the issue of liability only. At the new trial, the settlement agreement will, of course, be known and will be relevant evidence as bearing on the credibility of the testimony on liability. The manner and extent to which the settlement agreement is to be disclosed to the jury at the new trial is not now before us, but see, generally, the guidelines given in *Frey v. Snelgrove,* 269 N.W.2d 918 (Minn.1978).

Reversed in part; affirmed in part; and remanded for a new trial on liability only.