Roger E. JOHNSON, et. al.,
Respondents,

v.

Joseph URIE and American Family
Mutual Insurance Company,
petitioners, Appellants.

No. C0–86–920.

Supreme Court of Minnesota.

May 15, 1987.

Michael W. Haag, Duluth, for appellants.

Carol M. Person, Duluth, for respondents.

KELLEY, Justice.

When the legislature repealed Minn.Stat. § 65B.49, subd. 6(e) (1978) (a statute which mandated that an applicant for automobile insurance be offered underinsured motorist coverage), did the repeal extinguish all claims of insureds against insurance agents or companies who negligently had failed to offer underinsured motorist coverage? That contention of appellants Joseph Urie and American Family Insurance Company (American Family) was sustained by the trial court.[1] The court of appeals concluded the trial court had erred and remanded.[2] Although we employ somewhat different reasoning, we affirm.

At all material times, appellant Urie was an agent of appellant American Family. Johnson first purchased automobile insurance from Urie in 1976. That policy and subsequent renewals were written to provide only the statutory minimum no-fault and liability limits, and neither the policy nor the renewals provided underinsured motorist coverage. In June 1981 during a renewal period which had commenced in January, respondent Roger Johnson sustained serious injuries in a motor vehicle accident caused by Albert Busch. When it became apparent that Busch's liability insurance policy coverage was insufficient to compensate the Johnsons for the injuries sustained by Roger, they sought additional damages from Urie and American Family.

As written, Johnsons' automobile insurance policy provided no underinsured motorist coverage. The Johnsons initially commenced a diversity action in the United States District Court seeking to have underinsured motorist coverage imposed as a matter of law pursuant to *Holman v. All Nations Insurance Co.*, 288 N.W.2d 244 (Minn.1980), alleging that Urie breached a statutory duty to make an adequate offer of the optional underinsured coverage, or, in the alternative, that Urie breached an alleged common law duty to offer underinsured motorist coverage. While that federal case was pending, this court issued its decision in *Hauer v. Integrity Mutual Insurance Co.*, 352 N.W.2d 406 (Minn.1984). We there held that courts would not read into an automobile insurance policy underinsured motorist coverage when the policy had been renewed after repeal of the statute mandating its offer. Thereupon, the United States District Court granted summary judgment in favor of Urie and American Family with respect to the first count of the Johnsons' complaint (the one alleging breach of the statutory duty). It also dismissed the second count (the one alleging breach of a common law duty), but without prejudice.

Respondents then commenced the present action in state district court. In their complaint they alleged that Urie negligently selected the types of automobile insurance coverage for Johnson when Urie knew that Johnson was relying upon Urie's expertise in the insurance field. They also alleged that Urie had voluntarily assumed the duty of advising and counseling them with respect to the types and amounts of automobile insurance coverage needed. Finally, they asserted that by failing to "ex-

---

1. Before the trial court the issue arose on appellants' motion to dismiss. In an "Order" dated March 31, 1986, the trial judge purported to grant that motion. However, a "Summary Judgment" dated the same date was entered in favor of the appellants. In its "Order" the trial court certified a question to the court of appeals as being "important and doubtful." Because the record shows the entry of a summary judgment, and since Minn.R.Civ.App.P. 103.03(h) has been interpreted to permit certification only when an order denies a summary judgment motion (*see Price v. Amdal*, 256 N.W.2d 461, 463 n. 3 (Minn. 1977)), the court of appeals addressed the issue raised as an appeal from a summary judgment. We do likewise.

2. *Johnson v. Urie*, 394 N.W.2d 846 (Minn.App. 1986)

ercise that reasonable degree of skill and competence commonly possessed by similarly situated insurance agents," Urie had breached those voluntarily assumed duties. The trial court held that repeal of Minn. Stat. § 65B.49, subd. 6(e) extinguished all duties agents theretofore had to offer underinsured motorist coverage. Therefore, the allegations in respondents' complaint were insufficient to state a "cause of action."

■ We commence by observing that absent the existence of any common law duty owed by insurance agents to insurance applicants independent of Minn.Stat. § 65B.49, subd. 6(e) (1978), repeal of the statute would be irrelevant to the issue before us; and that consequently the entry of summary judgment should be affirmed albeit the judgment was granted for the wrong reason. Only if at common law an insurance agent's duty to offer, advise or furnish insurance coverage to an insured arises from the existence of special circumstances surrounding the relationship must we resolve whether the repeal of Minn. Stat. § 65B.49, subd. 6(e) quashed that duty. We conclude that circumstances of the transaction and the relationship of the agent vis-a-vis the insured may, on occasion, result in creation of the duty; and, that with respect to the optional underinsured motorist coverage, enactment of the repeal statute did not extinguish such a common law duty.

By narrowly focusing solely on underinsured motorist coverage to the exclusion of all other optional coverages available in various forms in automobile, fire and extended coverage, and general liability insurance policies, appellants argue that there is not now, nor has there ever been, a common law duty to offer underinsured motorist coverage insurance. They stress that prior to 1971 optional underinsured motorist coverage was unavailable in Minnesota, *see Jacobson v. Illinois Farmers Ins. Co.*, 264 N.W.2d 804, 805 (Minn. 1978), and that it was not until enactment of Minn.Laws 1971, ch. 581, that underinsured motorist coverage was even added to a list of supplemental coverages which in-

surers were to "make available." Insurers were not compelled to "offer" underinsured motorist coverage, as distinguished from the obligation to make it "available" until passage of the Minnesota No-Fault Automobile Insurance Act in 1974. Minn. Laws 1974, ch. 408. Subsequently, in *Holman* and other cases, we "read into" automobile insurance policies underinsured motorist coverage when insurers had failed to make the mandatory offers. Appellants correctly assert that no cases exist specifically imposing liability on insurance agents for failure to offer underinsured motorist coverage before enactment of the no-fault statute. From that history appellants conclude, that since underinsured motorist coverage was solely the creature of statute, an agent or insurer had no common law duty to offer it before 1972; and that the only existing duty to make the "offer" was created by statute and our case law interpreting the statute. Therefore, they argue, when the mandatory offer statute was repealed, any duty to make an offer of underinsured motorist coverage to an insured likewise expired with its demise.

It appears to us that the appellants focus on the issue too narrowly. We perceive that utilization of a broader perspective is more appropriate in analyzing whether a common law duty may exist, and, if so, the scope of that duty, not only with respect to the offer of underinsured motorist coverage, but also with respect to optional coverages in all sorts of insurance contracts. By looking at the issue in this wider view, we initially note that, tangentially at least, we have previously recognized that under certain circumstances an insurance agent may be liable in negligence at common law—or, in other words, insurance agents may have a nonstatutory duty, under certain conditions, to use reasonable care. While the decision holding an insurance agent liable in *Osendorf v. American Family Insurance Co.*, 318 N.W.2d 237 (Minn.1982) may be partially explained on the ground that liability was imposed for misrepresentation, it appears there that the misrepresentation, at the most, was negligently rather than intentionally made. The precise holding in *Osendorf* is further

clouded by an admission by the insurance agent there that he had the "obligation" to "update" the policy when he knew or should have known the insured (a) was unsophisticated in insurance matters, (b) was relying upon him (the agent) to provide appropriate coverage, and (c) needed protection from claims of farm laborers injured in farm accidents. Nevertheless, the *Osendorf* opinion supports respondents' contention that an insurance agent may have a duty, depending on the circumstances or the relationship the agent has with the insurance customer, to at least inform the customer of the existence of optional coverages. More recently, in *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271 (Minn. 1985), we recognized that there may exist a common law duty of an agent to affirmatively offer optional coverages notwithstanding the customer has not clearly requested such coverage. 366 N.W.2d at 279.[3] These decisions indicate we have recognized that, depending upon the existing circumstances, an insurance agent, on occasion, may have a common law duty to an insured to offer optional insurance coverages.

Other courts addressing the issue generally have held that while mere creation of an agency relationship between an insurance agent and an insured may not give rise to the imposition of an affirmative duty requiring the agent to advise his customer of the availability of optional coverages, circumstances surrounding the relationship may so alter that relationship as to result in the creation of a duty. For example, in *Hardt v. Brink*, 192 F.Supp. 879 (W.D.Wash 1961), the court held that the business practices and conduct of an insurance agent amounted to a representation that the agent was a highly skilled advisor on insurance matters justifying a customer's reliance upon the agent to advise him

as to his insurance needs when such needs have been brought to the agent's attention. *See also* 16A J. Appleman, *Insurance Law and Practice* § 8836, pp. 64–66 (1981); *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457 (Iowa 1984); *Sobotor v. Prudential Property & Casualty Ins. Co.*, 200 N.J.Super. 333, 491 A.2d 737 (App.Div. 1984). Even courts which have criticized *Hardt* as being overly broad have recognized, in appropriate circumstances, that an agent may owe a common law duty to advise of the availability of optional coverages. *See, e.g., Nowell v. Dawn-Leavitt Agency, Inc.*, 127 Ariz. 48, 617 P.2d 1164 (Ct.App.1980). The holdings of *Osendorf* and *Atwater*, though not directly on point, buttressed by the weight of authority from other jurisdictions, persuades us that, given the existence of appropriate circumstances, a common law duty to advise an insurance customer of optional coverages including underinsured motorist coverage may arise at common law.

By granting summary judgment to the appellants, the trial court held that 1980 Minn.Laws, ch. 539, § 7, which was the repealer statute of Minn.Stat. § 65B.49, subd. 6(e) (1978), the mandatory offer statute, extinguished the respondents' claim set out in their complaint. In support of the court's order, appellants argue that were we to recognize the continued existence of a common law duty to offer underinsured motorist coverage in appropriate circumstances, the recognition would frustrate the intent of the legislature manifested by repeal of the mandatory offer statute. They derive support for that contention from comments made by Senator Davies, a sponsor of the repealing statute, when discussing reasons for the repeal of the mandatory offer statute. His comments suggest that one motivating factor supporting repeal was to overrule our *Hol-*

---

**3.** In *Atwater* the plaintiff asserted that an agent, generally authorized to procure insurance for a business during a 17–year relationship, had the affirmative duty to check the business's insurance coverage, to notify the insured of uncovered risks, and to procure insurance, if available, to insure against those risks. In that case the plaintiff failed to offer evidence of the stan-

dard of care by testimony of an expert. Inasmuch as the existence of a duty revolves around the professional judgment of the agent, and the standard had not been established by expert testimony, even though this court recognized the possibility of the existence of such a duty, we affirmed the trial court's direction of a verdict in favor of the agent. 366 N.W.2d at 279.

*man* case whose effect, on occasion, had resulted in an insured getting substantial amounts of insurance coverage though neither purchased nor paid for. Senate Commerce Subcommittee on Insurance Hearing, February 28, 1980. But in our opinion those same comments more appropriately can be interpreted as being directed toward the remedy the court had imposed in *Holman* rather than the duty. In a slightly different context, we so concluded in *Sobania v. Integrity Mutual Insurance Co.*, 371 N.W.2d 197, 200 (Minn.1985). We opt to follow the same interpretation here.

■ Additionally, appellants assert their contention is supported by *Hauer v. Integrity Mutual Insurance Co.*, 352 N.W.2d 406 (Minn.1984). Again, we disagree. The decision in *Hauer* addressed neither the issue of whether the agent had a common law duty to offer underinsured coverage nor whether enactment of the repeal statute precluded the assertion of any claim of an insurance customer against an agent based upon a common law duty. Rather, the sole issue on appeal in *Hauer* was whether the court should read underinsured motorist coverage into an automobile insurance policy which had been renewed after the repeal of the mandatory offer statute. 352 N.W.2d at 408.

■ The purpose of the legislation, accomplished by the repeal of Minn.Stat. § 65B.49, subd. 6(e), was to shift the burden the repealed statute had theretofore placed upon the insurer to show that the coverage had been offered onto the customer to show circumstances creating a duty to offer the coverage. In short, following repeal, an insurance customer possessed the same burden normally possessed by any other plaintiff when attempting to establish professional liability, to

wit: (a) the existence of the duty, (b) its breach, (c) causation, and (d) damages.

■ One of these burdens borne by the plaintiff is establishment of the existence of a defendant's duty. In this case, when appellants moved in the trial court for dismissal, respondents advanced no evidence by way of affidavits, documents, or depositions to support their claim that a common law duty existed. Apparently because the dismissal motion was based upon the claimed legal effect of the repeal statute, they merely relied upon the allegations of their complaint. In this instance such reliance was not fatal, however, because appellants' dismissal motion was, in essence, made pursuant to Minn.R.Civ.P. 12.02 and was unsupported by matters extraneous to the pleadings. Respondents, therefore, had no obligation under Minn.R.Civ.P. 56.-05 to advance evidence *dehors* the complaint. Thus, in ruling on the motion the trial court had before it only bare allegations of the complaint without competent proof of any of the circumstances surrounding the procurement of the insurance or the relationship between Urie and the Johnsons. When facts merely demonstrate nothing more than the creation of an agency relationship, a court may be justified in granting of summary judgment. But if the allegations contained in the complaint can be properly established, a common law duty may exist. In this case, if plaintiffs can establish by competent evidence the allegations in their complaint, there may arise a duty on the part of Urie to either have offered or at least explained underinsured coverage.[4]

Absent factual establishment of the circumstances surrounding the relationship between Urie and the Johnsons, the trial court was premature in granting the dismissal motion and ordering the entry of summary judgment.[5]

---

4. Respondents attempted to make some showing of the existence of facts that might create a common law duty. That attempt, however, did not comply with Minn.R.Civ.P. 56.05.

5. We note, however, that resolution of the duty issue, contrary to the assertion of the respondents, does not depend upon a jury determination: rather the existence of a duty is a question

of law for court determination. *See Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn.1986). The existence of that duty may turn upon the particular facts, which, if contradicted, may be submitted to the jury for resolution, but the legal decision of whether a duty exists upon any facts so found rests with the court.

We hold that repeal of Minn.Stat. § 65B.49, subd. 6(e), did not extinguish a common law duty of an insurance agent to offer the optional underinsured motorist coverage if circumstances existed giving rise to a duty of the agent toward the customer. In this case, the granting of the motion of the appellants to dismiss and the entry of summary judgment was premature. Accordingly, we affirm both the reversal and the remand of the court of appeals.