Max **CAMPBELL, individually and as Personal Representative of the Estate of James Campbell, Deceased, Appellant,**

v.

**VALLEY STATE AGENCY, Respondent.**

No. CX–86–1699.

Court of Appeals of Minnesota.

June 2, 1987.
Review Denied July 22, 1987.

Kenneth F. Johannson and Robert J. Schmitz, Dickel, Johannson, Taylor, Rust & Schmitz, P.A., Crookston, for appellant.

Patrick R. Morley and Michael J. Morley, O'Grady, Morley & Morley, Ltd., Grand Forks, N.D., for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a judgment entered against appellant Max Campbell in his negligence action against his insurance agent, respondent Valley State Agency. The jury found Valley State not negligent and found no damages. The court denied Campbell's post-trial motions which claimed the court made errors of law and the jury verdict was not justified by the evidence and was contrary to law. We affirm in part, reverse in part and remand for a new trial.

## FACTS

Max Campbell and his son James, since deceased, were defendants in personal injury actions arising out of an automobile accident which occurred on September 3, 1979. In this accident, Gregory Wieland and his wife Doris were seriously injured; two of their children were killed and two others injured.

Three other vehicles were involved in the accident, including a truck owned by Max Campbell's wholly-owned company and a truck owned by James Campbell and his brother-in-law, James Bushaw. Max Campbell was insured by Tri-State Insurance, with policy limits of $100,000 per person and $300,000 per occurrence. Campbell obtained this policy through Valley State.

The first Wieland action, for Gregory's injuries and Doris' loss of consortium, went to trial in June of 1982. The jury awarded damages of $1,500,000 to Gregory and $300,000 to Doris and apportioned fault among the three defendants. The trial court denied the defendants' post-trial motions but wrote a memorandum indicating the verdict may have been excessive.

Apparently motivated by concern over the outcome of any appeal, Wielands agreed to a settlement covering the remaining actions as well as the unsatisfied judgment. Wielands agreed to accept as full satisfaction the amounts already paid out by the insurers in exchange for the defendants' agreement not to appeal the judgment and Max Campbell's agreement to pursue this action against Valley State. As part of the settlement, Campbell paid individually the sum of $10,000, which was to be repaid out of any recovery from Valley State. This action was brought, claiming Valley State was negligent in advising Max and James Campbell on their insurance needs, causing them to be underinsured.

Max Campbell owned four bean processing plants in the Red River Valley and had a net worth of $2½ to $3 million at the time of the accident. He was a founder and director of the Valley State Bank, which owned and operated Valley State Agency. Campbell alleges the agency should have known of his need for additional coverage because it was familiar with his net worth. As a director, Campbell's financial statement was on file with the bank.

Valley State's insurance manager in 1978–79, John Kinsey, knew Max Campbell was a millionaire, although he never checked the bank's records for Campbell's net worth. Kinsey had some contact with Campbell on the annual policy renewal date but claimed he never had an opportunity to sit down with him to discuss additional coverage on his automobile insurance policy. Kinsey was also attempting to get Campbell's other insurance (homeowner's, commercial liability and property insurance), which Campbell had placed through other agencies. Kinsey could not recall discussing "umbrella" coverage with Max

Campbell. Kinsey advised James Campbell to buy an umbrella policy, but he refused.

Max Campbell testified he knew little about insurance and left his coverage up to the agency. He could recall no discussion about an umbrella policy with anyone. He thought his policy limit of $300,000 was the most coverage he could obtain. Campbell testified he would have bought an umbrella policy had he been advised of that option and its cost.

Campbell's expert witness, Gary Emerson, testified that an agent has a duty to offer additional coverages based on his or her judgment of the needs of the insured. He stated his opinion that Kinsey had a duty to inform Campbell of the availability of umbrella coverage. Emerson testified an agent should write to an insured who is unwilling to meet to discuss additional coverage.

Valley State's current insurance manager testified that an agent has a duty to periodically review coverage. He stated a "reasonably careful" agent would have made Campbell aware of umbrella coverage. Valley State's expert, Mike Tillisch, testified that Kinsey made reasonable efforts to contact Campbell in order to discuss coverage and had no duty to advise him of umbrella coverage.

Over objection, the trial court allowed Max Campbell to be questioned about the settlement agreement. He stated his understanding of the agreement was that he would not have to pay the unsatisfied judgment, regardless of the outcome of this action. Campbell also objected to the instruction given the jury on the duty of an insurance agent and argued the issue of damages should not be submitted to the jury.

The jury found Valley State not negligent with regard to the insurance coverage it provided either Max or James Campbell. The jury found neither Max nor James negligent with regard to the insurance coverage purchased or not purchased and assessed zero damages.

## ISSUES

1. Did the trial court err in instructing the jury on the duty of an insurance agent?

2. Did the trial court err in allowing cross-examination of Campbell concerning his settlement with Wielands?

3. Did the trial court err in submitting the issue of damages to the jury?

## ANALYSIS

### I

The trial court gave the following instruction on the duty of an insurance agent:

> An insurance agent has a duty to exercise the standard of skill and care that a reasonably careful person engaged in the insurance business would use under like circumstances. *In the absence of an agreement by the agent to provide insurance, the agent has no legal duty toward an insured beyond that specifically undertaken by him.*

(Emphasis added.)

The last sentence of the instruction, to which Campbell objected, does not address the duty of an agent to advise an insured of the availability of additional coverage. It incorporates the law of agency and appears to negate any claim of professional negligence. In this case, that was tantamount to a directed verdict.

The supreme court has indicated, in a case involving burglary insurance, that where there is expert testimony to establish the standard of care,

> an insurance agent, generally authorized to procure insurance for a business, [may have] an ongoing affirmative duty to carefully check over the current coverage, to notify the business of gaps, and to search out insurance to fill those gaps.

*Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271, 279 (Minn.1985). The supreme court has recently held that "given the existence of appropriate circumstances," an agent may have a duty to advise an insurance customer of additional, optional coverages. *Johnson v. Urie*, 405 N.W.2d 887, 890 (Minn.

1987) (no offer or advice concerning underinsured motorists coverage).

A party is entitled to a specific instruction on his or her theory of the case if there is evidence to support it. *Lhotka v. Larson,* 307 Minn. 121, 125, 238 N.W.2d 870, 874 n. 7 (1976). Campbell presented the expert testimony, establishing the applicable standard of care, that was absent in *Atwater.*

The last sentence of the instruction, requested by Valley State, is taken from *Johnson v. Farmers and Merchants State Bank of Balaton,* 320 N.W.2d 892, 898 (Minn.1982) (citing *Collegiate Manufacturing Co. v. McDowell's Agency, Inc.,* 200 N.W.2d 854 (Iowa 1972)). In *Johnson,* the insured alleged, alternatively, that the agent had mistakenly assured him he had "blanket coverage" or that the agent had failed to periodically review coverage. *Johnson,* 320 N.W.2d at 896, 898. The insured did not claim the agent was negligent in failing to advise him of the availability of additional coverage; indeed, the insured had been advised and declined to add coverage. *Id.* at 898.

Here, no claim was made that Valley State failed to procure the insurance Campbell requested. That fact alone made the instruction misleading. The instruction, however, also suggests the agent acquires no legal duty by virtue of the professional relationship. The supreme court, however, has indicated in *Atwater* and recently in *Urie* that an agent may undertake an affirmative duty by entering into a special relationship with the insured. *See Atwater,* 366 N.W.2d at 278, 279 (insured had a 30–year relationship with the agent and relied on him). The jury could have found a special relationship existed between Valley State and Campbell and, based on the expert testimony, that Valley State failed to meet the applicable standard of care.

## II.

The trial court allowed Campbell to be questioned concerning the settlement agreement with Wielands. The court expressed its concern over

leaving the impression with this jury that but for recovery against Valley State Agency, the Campbells are personally stuck for these monies.

The trial court instructed the jury it could consider the agreement only "on the issue of the credibility of the witnesses and their interest in this case, and for no other purpose."

Valley State contends the Wieland-Campbell agreement is similar to *Pierringer* releases and "Mary Carter" agreements, which, under some circumstances, should be disclosed to the jury. *See Frey v. Snelgrove,* 269 N.W.2d 918, 923 (Minn.1978) (*Pierringer* release); *Johnson v. Moberg,* 334 N.W.2d 411, 415 (Minn.1983), *appeal after remand,* 354 N.W.2d 613 (Minn.Ct.App. 1984), *pet. for rev. denied,* (Minn. Feb. 19, 1985) ("Mary Carter" agreement). Such agreements, however, are between parties to the litigation. They result in parties being absent from the courtroom or in hidden motivations, masked by the apparent adversity of the parties. *Johnson v. Moberg,* 334 N.W.2d at 415; *Frey v. Snelgrove,* 269 N.W.2d at 923. Wielands are not parties to the present action, and their agreement with Campbell does not alter any adversarial posture in this action.

The possibility of misplaced juror sympathy is present whenever a cause of action has been assigned, or an insurer brings a third-party action in the name of its insured, or a defendant's liability is covered by insurance. In each case, the named party's stake in the litigation may be apparent only, but the law permits the fiction, in part, to avoid jury prejudice against the insurer, subrogee or assignee. *See* Minn. R.Evid. 411 (evidence of insurance excluded except for limited purposes).

Disclosure of the agreement to the jury revealed Wielands as the party having a substantial interest in the litigation. This introduced extraneous issues, particularly the size of the Wieland verdict. Alternatively, since Wielands were not a party before them, the jury could have determined there was no real issue for them to decide. This may have been reflected in

the verdict of no negligence by any party and zero damages.

In *Riewe v. Arnesen*, 381 N.W.2d 448, 454 (Minn.Ct.App.1986), *pet. for rev. denied*, (Minn. March 27, 1986), this court required disclosure of a loan-receipt agreement between insurers and their insureds. The insured doctors had settled a patient's malpractice claim against them. As part of the settlement, the doctors' insurers loaned them monies under a loan-receipt agreement requiring the doctors to prosecute a third-party action against a surgeon whom the plaintiff had not sued. In this respect the loan-receipt agreement was similar to the Wieland-Campbell agreement. The *Riewe* agreement, however, was tied to a settlement agreement establishing the settling doctors' shares of the plaintiffs' recovery. In the third-party action, therefore, the settling doctors were not trying to persuade the jury of each other's fault, as the jury would expect among joint tortfeasors, but were only attempting to maximize the fault of the non-settling surgeon. This hidden motivation required disclosure to the jury. *See Moberg*, 334 N.W.2d at 415.

### III.

Campbell contends the trial court should have determined his damages as a matter of law. This argument relies on testimony that the minimum umbrella policy available in 1979 was $1 million. Campbell, however, failed to present evidence indicating whether such a policy limit would have included the amounts of underlying coverage provided by Campbell's automobile insurer. *Cf. Jostens, Inc. v. Mission Insurance Co.*, 387 N.W.2d 161, 165 n. 1 (Minn. 1986) (indicating policy limits of an umbrella policy include the amounts of underlying coverage provided by other policies).

The jury, if it found negligence and causation, would have to determine what amount of insurance Campbell would have purchased but for Valley State's negligence and what coverage he would have received. The trial court did not err in submitting damages to the jury.

**DECISION**

The trial court erred in instructing the jury on the duty of an insurance agent. The court erred in allowing cross-examination revealing the Wieland-Campbell settlement agreement. While it was not error to submit the question of damages to the jury, because of the necessity of a new trial on other issues, this should include as well a new trial on damages.

Affirmed in part, reversed in part and remanded.