**Timothy D. GABRIELSON, et al., Appellants,**

**v.**

**James L. WARNEMUNDE, d/b/a Warnemunde Insurance Agency, Respondent.**

**No. C6-88-1011.**

Court of Appeals of Minnesota.

Nov. 1, 1988.

Review Granted Jan. 3, 1989.

Terence L. Meany, Leighton, Meany, Cotter, Enger & Seibel, Ltd., Austin, for Timothy D. Gabrielson.

John D. Hagen, Jr., Minneapolis, for Gayle Gabrielson.

Frederick R. Jacobberger, Gilsdorf & Jacobberger, St. Paul, for James L. Warnemunde.

Heard, considered and decided by HUSPENI, P.J., and NORTON and HACHEY,* JJ.

## OPINION

NORTON, Judge.

Timothy and Gayle Gabrielson appeal the summary judgment dismissing their negligence claim against insurance agent James L. Warnemunde. We reverse and remand.

## FACTS

Respondent Warnemunde and James LaCanne have known each other most of their lives. They attended the same schools in Morristown, Minnesota, from grades K–12 and graduated together in 1973 from the same high school class of about 30 students. Although they never were close friends, they would occasionally run into each other in a local Morristown bar.

Throughout his childhood, LaCanne lived in a home on Cedar Lake where his parents owned and operated a lake resort. The LaCannes rented out numerous boats to vacationers and Warnemunde agreed that the LaCanne family could be characterized as "boat people." The LaCannes sold their resort in 1974 and soon thereafter LaCanne purchased his own home.

Sometime in early 1978, LaCanne learned that Warnemunde had recently purchased and was operating an insurance agency. LaCanne already had a homeowners insurance policy through another agent, but was willing to switch agents to support Warnemunde in his new business endeavor. LaCanne thus talked with Warnemunde and

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

they subsequently met at LaCanne's house in the spring of 1978 to finalize the deal. Neither can remember the details of the discussion, but they agree Warnemunde asked many questions about the house and about LaCanne's personal property. Warnemunde used a checklist and one of the questions on the checklist was: "Is insurance to apply to watercraft?" The box "no" after the question was checked. LaCanne admits he owned no boat in 1978 and thus did not at that time need liability coverage for boat accidents. Warnemunde did not tell him, however, that a special endorsement would be necessary if LaCanne acquired a boat equipped with an outboard motor of over 25 horsepower.

Warnemunde subsequently procured a homeowner's policy for LaCanne, effective May 28, 1978, through May 28, 1979. The policy was subsequently renewed for one year terms beginning May 1979, 1980, 1981 and 1982. LaCanne claims that Warnemunde never spoke with him or came out to his home prior to any of the policy renewals. Although Warnemunde disputes these claims, he has agreed for purposes of this motion that he did not go out to La-Canne's house when the policy was renewed. Thus, Warnemunde agreed for purposes of this motion that the policy was renewed simply by his mailing of a statement to LaCanne and LaCanne's subsequent mailing of the annual premium.

Sometime in April 1982 LaCanne purchased a boat with a 50 horsepower outboard motor. He did not tell Warnemunde about the boat because he was not aware his policy excluded coverage for bodily injury or liability "arising out of the ownership, maintenance, use, loading or unloading of: * * * a watercraft * * * powered by one or more outboard motors with more than 25 total horsepower * * *."

LaCanne admitted he did not thoroughly read his policy. Warnemunde said that homeowners normally do not understand the provisions of their policies, however, and thus rely on him, as an insurance professional, to make sure they are adequately covered.

On August 7, 1987, while operating his motorboat, LaCanne injured Timothy Gabrielson. The Gabrielsons subsequently brought an action against LaCanne. The homeowner's insurance carrier, Gopher State Mutual, moved for and obtained a declaratory judgment that it was not liable to defend or indemnify LaCanne because coverage was excluded by the policy. The Gabrielsons and LaCanne then entered into a stipulation whereby LaCanne admitted negligence and confessed judgment for $125,000. However, the Gabrielsons agreed they could recover on the judgment only to the extent Warnemunde was liable to LaCanne for negligence in procuring and servicing LaCanne's insurance policy. LaCanne then assigned his cause of action to the Gabrielsons and the Gabrielsons commenced this action against Warnemunde.

In his own defense, Warnemunde testified at length in his deposition about how he was trained as an insurance agent and about his standard procedures for selling and renewing policies. He said that since 1975 he has been an independent insurance agent licensed to write fire, casualty, auto, life, health and homeowners insurance. Before being licensed, he attended classes at a school for insurance agents where he learned how to write and sell the various types of policies.

He said that after he sold a homeowners' policy, his standard procedure was to go out to the insured's home every year to renew the policy. He said he did not have a written checklist, but would basically go out to the home and see if there had been any additions or remodeling done. He said the way to "get the best grip on what was happening [was] by going out and just eye-balling what was going on and talking to them." He did not, however, make specific inquiries to see if there might be items which came within exclusions to the policy.

Warnemunde moved for summary judgment, arguing that he had no duty to each year determine whether or not LaCanne had purchased a motorboat with an engine over 25 horsepower. The record for the motion consisted of Warnemunde's and La-Canne's depositions and an affidavit by a

Certified Property Casualty Underwriter (CPCU). The affidavit recited the facts of the case and expressed the opinion that Warnemunde "did not exercise the standard of skill and care that others in the business would have exercised."

The trial court granted Warnemunde's summary judgment motion. In its supporting memorandum, it reasoned:

> LaCanne, as the purchaser of personal property and purchaser of the homeowner's policy, is in a much better position to notify the insurance carrier of his purchases and of his protection requests than placing that burden on the insurance carrier.
>
> While it is an excellent suggestion that an insurance agent have a yearly consultation with their policyholders regarding their insurance needs, absent a legal duty to do so, there is no legal liability if they do not do so.

The Gabrielsons appeal from this summary judgment.

## ISSUE

Did the trial court err in concluding that, as a matter of law, Warnemunde could not have been negligent for failing to offer additional coverage?

## ANALYSIS

The moving party is entitled to summary judgment if, based on the entire record, there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03; *Bixler by Bixler v. J.C. Penney Co., Inc.*, 376 N.W.2d 209, 215 (Minn.1985). The parties have stipulated, for the purposes of this motion, to any facts which might be disputed at trial. Therefore, the only issue is whether the trial court erred in its legal conclusion that Warnemunde could not, as a matter of law, be negligent in his sale and servicing of LaCanne's homeowner's policy.

■ An insurance agent has the duty to exercise the degree of skill and care that a reasonably prudent person engaged in the insurance business will use under similar circumstances. *Johnson v. Farmers &* *Merchants State Bank of Balaton*, 320 N.W.2d 892, 898 (Minn.1982). Thus, the insurance agent's duty depends on the "circumstances of the transaction and the relationship of the agent vis-a-vis the insured." *Johnson v. Urie*, 405 N.W.2d 887, 889 (Minn.1987). Although we find no cases involving the duty to offer optional homeowner's coverages, the supreme court has held that a common law duty may exist to offer optional coverages in all sorts of insurance contracts. *Id.* at 890.

■ An insurance agent generally does not have a duty to "ferret out" at regular intervals information which brings a policyholder within the provisions of an exclusion. *Tollefson v. American Family Insurance Co.*, 302 Minn. 1, 5, 226 N.W.2d 280, 283 (1974), *cited in Kashmark v. Western Insurance Companies*, 344 N.W.2d 844, 847 (Minn.1984). The agent does have a duty, however, to initially inform the insured of the appropriate coverage. *Louwagie v. State Farm Fire and Casualty Co.*, 397 N.W.2d 567, 570 (Minn. Ct.App.1986), *pet. for rev. denied* (Minn. Feb. 13, 1987). In addition, under certain circumstances the agent may have a duty to offer additional coverage where the agent has reason to believe the insured would desire such additional coverage. *See Osendorf v. American Family Insurance Co.*, 318 N.W.2d 237, 238 (Minn.1982) (agent had duty to inform farmer of need for liability coverage for part-time employees where agent was aware that farmers almost universally engage part-time help). Such an ongoing duty may also be inferred where the agent admits he should periodically update the policy because the insured is relying on his expertise. *See id.*

We conclude that under the circumstances of this case the trial court erred in ruling that, as a matter of law, Warnemunde did not breach a duty of care in servicing LaCanne's homeowners policy. An insurance agent's duty of care depends on the particular circumstances of the transaction and the relationship between the agent and the policyholder. *Johnson v. Urie*, 405 N.W.2d at 889. The relationship between Warnemunde and LaCanne was

close enough and longstanding enough that a jury could find Warnemunde breached his duty of care in servicing LaCanne's policy.

Warnemunde had known LaCanne all his life and had been servicing his homeowner's policy for four years. Furthermore, Warnemunde knew that LaCanne, like many homeowners, probably did not understand the exclusions in his policy and was relying on Warnemunde's expertise as an insurance professional to suggest the appropriate coverage. Most importantly, Warnemunde knew that LaCanne's family had for more than 20 years owned a lake resort and numerous watercraft.

Although he knew that LaCanne's family had a strong interest in boating, Warnemunde did not initially inform LaCanne of the standard 25 horsepower outboard motor exclusion. This failure to initially inform LaCanne could be a basis for a finding of negligence. *See Louwagie,* 397 N.W.2d at 570.

Warnemunde stipulated for purposes of this motion that he never went out to LaCanne's house or otherwise discussed LaCanne's policy needs after initially selling the policy. If this is true, then he might be found negligent for failing to periodically update the policy as he admitted he should have done. *See Osendorf,* 318 N.W.2d at 238. He might also be found negligent for failing to inquire whether LaCanne owned a boat when he had good reason to believe that LaCanne might have had one. *See id.*

We are not persuaded by Warnemunde's argument that LaCanne, as a homeowner, was in a better position to know of his additional insurance needs. The insured is only in a better position to know of his needs if he understands the applicable exclusions. In this case, LaCanne did not understand there was an exclusion. Whether LaCanne was partly at fault for not reading through his exclusions is for the jury to decide in light of the fact that, as Warnemunde admits, most homeowners cannot understand their policies without an agent's assistance.

We therefore reverse the trial court's order for summary judgment and remand the matter for trial to determine whether Warnemunde exercised the degree of skill and care that a reasonably prudent person engaged in the insurance business would use under similar circumstances. *See Johnson v. Farmers & Merchants State Bank,* 320 N.W.2d at 898.

We do not decide the question of whether on remand expert testimony is necessary to assist the jury in determining if Warnemunde was negligent.

> [I]f it would be speculative for the factfinder to decide the issue of negligence without having the benefit of expert testimony on the standard of care, the expert testimony is necessary. Insurance agents are professionals in a field that few lay persons know well. However, it is not a field that is so highly technical that the public cannot understand at least the general nature of an agent's responsibilities.

*Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271, 279 (Minn.1985). The decision whether to require expert testimony is thus left to the trial court's sound discretion. *See Dunshee v. Douglas,* 255 N.W.2d 42, 47 (Minn. 1977).

### DECISION

The decision of the trial court is reversed and the matter is remanded for trial in accordance with this opinion.

**REVERSED AND REMANDED.**