617 P.2d 1164

**Wanda NOWELL, Plaintiff–Appellant,**

v.

**DAWN–LEAVITT AGENCY, INC., a corporation; and William Dawn and Carol Dawn, his wife, Defendants–Appellees.**

**No. 1 CA–CIV 4321.**

Court of Appeals of Arizona, Division 1.

Aug. 12, 1980.

Rehearing Denied Sept. 17, 1980.

Review Denied Oct. 7, 1980.

Gust, Rosenfeld, Divelbess & Henderson by James M. Koontz, and Frederick G. Gamble, Phoenix, for plaintiff–appellant.

Moore, Jennings, Kepner, Scheffing & Hart by Craig R. Kepner and Jack R. Cunningham, Phoenix, for defendants–appellees.

HAIRE, Judge.

The plaintiff–appellant, Wanda Nowell, acting as her own general contractor, constructed a residence on the south slope of Camelback Mountain. She purchased a standard "homeowner's" policy from Transamerica Insurance Company through the appellee, Dawn–Leavitt Agency, Inc. Some three years later a torrential rainstorm occurred in the area which sent water, mud and rocks over and through a diversion wall which she had built, and through the house, resulting in substantial damage. After appellant discovered that her standard homeowner's policy did not provide coverage for damage by flooding, she commenced this action against the appellee agency and William Dawn, a shareholder–employee, who serviced appellant's account. The complaint charged negligence and breach of contract arising from failure to procure for appellant flood insurance coverage. During the course of discovery it became clear that the gravamen of appellant's action was the failure by appellees to advise her that there was no such coverage in her standard homeowner's policy, but that such coverage was available by rider for an extra premium. The trial court granted appellees' motion for summary judgment and appellant has taken this appeal.

Appellant is a former schoolteacher and licensed real estate salesperson who had, prior to the loss in question, constructed three houses for herself. She commenced doing business with the appellee insurance agency upon the recommendation of a relative who worked there. She utilized the services of the agency to purchase "course of construction" and homeowner's insurance policies. She purchased her automobile in-

surance through another agent or agency and there is no indication that she purchased any other insurance through appellees. Her contacts with the appellee agency were mostly by telephone, and were generally confined to either ordering a policy for one of the three residences or making a claim after some damage had been sustained. She frequently talked on these occasions to secretarial or other employees of the agency rather than to William Dawn.

On one occasion during the construction of the Camelback residence she did speak with Dawn and sought his advice with respect to persons employed at the construction site. Dawn advised her to purchase a policy of workmen's compensation insurance. She declined this suggestion. Upon the occasion of her ordering the homeowner's policy for the Camelback residence, she inquired of William Dawn as to what would be involved in insuring her jewelry if it were to be kept in the house. Dawn responded that this would entail separate and additional coverage which was quite expensive. Appellant elected not to obtain this extra coverage and placed her jewelry in a safe–deposit box instead.

It is clear that "flood insurance", as such, was never discussed in connection with appellant's order for "living–in" insurance for the Camelback residence. It is important to note that "flood insurance" is a generic term for not only damage from flooding from waters, but also from landslide and mudslide, which would include, according to Dawn's testimony, damage from falling rocks. Dawn testified that such coverage is available by additional rider, but that it is expensive, costing perhaps an additional premium of $1,500 per year. Appellant's testimony indicates that she had a thrifty attitude towards the purchase of insurance. She testified that she told Dawn that she "wanted to have the very best policy, but * * * cut off everything that * * * could possibly [be] cut off."

Appellant factually bases her claim that Dawn should have advised her in regard to flood insurance coverage upon three circumstances. First, when she called Dawn to cancel her course of construction policy and to acquire a homeowner's policy, she asked for "the best policy they had". Secondly, there was an article published in a local newspaper concerning the difficulties encountered by appellant and her son in constructing the Camelback Mountain residence. The article referred to the problem of rain and erosion and also referred to the fact that during the course of construction an 800–pound boulder rolled down the mountain and destroyed some of the framing for the house. Dawn testified in his deposition that he had seen (but not read) this rather striking article which was accompanied by pictures of the hillside residence. We have carefully read Dawn's testimony in regard to his having seen this article, and bearing in mind the familiar principles that we must view the evidence in the light most favorable to appellant and give her the benefit of reasonable inferences, we have rejected appellees' contention that there is no basis for a conclusion that Dawn saw the article at the time appellant was making her application. Appellant thirdly cites the fact that Dawn testified that if he had seen the residence he would have recommended purchase of flood insurance and the further fact that both of the applications for insurance coverage on the property contained recitals that an employee of the agency had visited the property.

The fundamental legal question posed by this appeal is whether there is a cause of action for an insurance agent's failure to advise or impart information to a purchaser, as distinguished from a failure by the agent to procure insurance ordered by the principal. Appellees contend that there should be no duty to inform, and argue in their brief as follows:

". . . To impose such a duty would create a virtually unmanageable situation. Agents would be subject to lawsuits and liability in each case in which a client suffered a loss for which the client did not have insurance coverage, in spite of the fact that the client never requested or even mentioned the coverage in question. The agent would be obligated, absent any

request by the insured, to read each policy to each insured, line by line, advising the insured, not only of each exclusion or limitation, but advising him with regard to all other coverages which might cover items which are not covered in the policy which was requested and procured."

 It has been the long–established rule that it is the insurance consumer's responsibility to educate himself concerning matters of insurance coverage. This rule finds expression in the case of *Hill v. Grandey*, 132 Vt. 460, 321 A.2d 28 (1974), at page 34:

"An insurance contract arises out of the insured's desire to be protected in a particular manner against a specific kind of obligation. It is his responsibility to adequately convey, albeit in laymen's terms, the nature of his wishes, in order to obtain the protection requested. An insured need not insure himself against every obligation which may arise. He need not carry all his insurance with one agent, nor all his insurance of the same general nature with one agent. An agent may point out to him the advantages of additional coverage and may ferret out additional facts from the insured applicable to such coverage, but he is under no obligation to do so; nor is the insured under an obligation to respond."

While *Hill v. Grandey* involved insurance against potential liability, the stated principles would apply with at least equal rigor in the case of property insurance, where an insured has a first–hand appreciation of the risks that he wishes to be covered. *See also Collegiate Manufacturing Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854 (Iowa 1972).

One case, however, squarely recognizes a cause of action for an insurance man's failure to advise his client of the need for coverage. In *Hardt v. Brink*, 192 F.Supp. 879 (W.D. Wash. 1961), the defendant Brink had for some eight years counseled the plaintiff Hardt with respect to all of his personal and business insurance needs. When Hardt leased a building in California, he advised Brink of the fact. The lease, in effect, made Hardt responsible for obtaining fire insurance coverage. Although

Hardt did not show Brink a copy of the lease, an expert witness active in the insurance business in Seattle, where both Hardt and Brink live, testified that Hardt's mention of the lease should have been a "red flag" to Brink in view of the close relationship of the parties. After the leased building burned and Hardt was required to pay damages, he sued Brink for failing to advise him to obtain coverage. In the course of holding for *Hardt*, the judge stated:

"Clearly, the ordinary insurance solicitor only assumes those duties normally found in any agency relationship. In general this includes the obligation to deal with his principal in good faith and to carry out his instructions. No affirmative duty to advise is assumed by the mere creation of an agency relationship. (See cases collected in 29 A.L.R.2d 171). However, this does not mean that the agent cannot assume additional duties either by express contract or a holding out.

\* \* \* \* \* \*

Whether or not an additional duty is assumed will depend upon the particular relationship between the parties. Each case must be decided on its own peculiar facts. The law here involved is not particularly startling nor is it necessarily an extension over previous cases. This is an age of specialists and as more occupations divide into various specialties and towards 'professional' status the law requires an ever higher standard of care in the performance of their duties. Restatement (Second) Torts, § 299 A (Tent. Draft No. 4, 1959).

\* \* \* \* \* \*

"Whether defendant intended to act as a consultant and counselor as well as a solicitor of insurance is not clear. But it is clear that through the designations on his letterheads and the stickers he attached to policies issued by his office defendant held himself out to be an insurance expert. Under the evidence I am convinced that by his conduct and business practices defendant permitted a reasonable inference to be drawn by his customers, such as plaintiff, that he was a person highly skilled as an insurance advisor and that plaintiff relied upon him as

such. Under these circumstances defendant assumed a duty to advise plaintiff as to his insurance needs in connection with his business, particularly where such needs have been brought to defendant's attention."

192 F.Supp. at 880–881.

*Hardt v. Brink* has been viewed as a somewhat revolutionary authority. *See Harnett, Responsibilities of Insurance Agents and Brokers* (Matthew Bender & Co. 1979), § 3.12. Indeed it is, because within the professional relationship in which its rule of liability is operative, it eliminates the principal's duty of self–education and places the onus upon the insurance counselor.

Whether, and the extent to which a new cause of action or liability is recognized in this jurisdiction, is ultimately a question of public policy, *e. g., Arizona Title Insurance & Trust Co. v. O'Malley Lumber Co.*, 14 Ariz.App. 486, 484 P.2d 639 (1971). In respect to the present case, we think it pertinent to take notice of the fact that the insurance industry is generally structured in such a manner that it is in the economic self–interest of an agent or agency to sell as many coverages as it can. More specifically, with reference to the present case, there is no indication that appellees were to receive any consideration for consultation and advice as such, as opposed to the premium to be paid for the homeowner's policy.

█ *Hardt v. Brink* has not produced an impressive progeny. Part of the reason for that may lie in the fact that it works a radical change in the respective duties of the to–be–insured principal and his agent. We are a nation which prides itself in its literacy. With our courts straining to dispose of a mass of litigation, including a greatly increased increment in the malpractice field in situations where it may not be in the economic self–interest of the defendant to impart as much information as possible to his client, we fail to see that sound policy requires that we reinforce the typical insurance agent's self–interest with a potential legal liability. We accordingly believe that the liability recognized in *Hardt v. Brink* should be confined to situa-

tions where an insurance counselor is receiving a consideration for his services apart from a premium to be paid for a commodity insurance policy, or there is a long–established relationship of entrustment between insurance counselor or agent and client from which it clearly appears that the insurance counselor appreciated that there was a duty to take the initiative in giving comprehensive advice to his client on insurance matters. *Hardt v. Brink* appears to fall within the latter category. We emphasize that no failure to follow instructions or active misrepresentation is involved in this case.

█ With these principles in mind, we believe that the trial court correctly granted summary judgment in favor of appellees. It clearly appears upon the developed record that although appellant apparently purchased all of her homeowner's and course of construction policies through appellees, she did so on an essentially principal and agent basis. While she occasionally sought information with respect to particular risks, she did not follow her agent's recommendation in a matter of obvious importance. Appellant is a woman of considerable independence and accomplishment and with her background in construction and real estate, it was not incumbent upon William Dawn to assume her ignorance as to a prominent exclusion in a standard homeowner's policy. The entire record reveals a course of dealing between the parties which negates the kind of relationship of entrustment and initiative which is the basis for liability in *Hardt v. Brink*.

█ In regard to the asserted cause of action for breach of contract, we think that it is too simplistic for appellant to assert as she does, that, in requesting a homeowner's policy, a mere direction to obtain "the best policy" must amount to a direction to procure a policy covering all foreseeable risks which appellees breached by issuance of a standard policy. Appellant has not cited any authority for the proposition that a generalized request of this nature in and of itself amounts to a definite contract. *Cf. Dodge v. Aetna Casualty & Surety Co.*, 127 Vt. 409, 250 A.2d 742 (1969). The word "best", of course is not susceptible of pre-

cise translation in this context. We do not find in the record any evidence that the parties had a meeting of the minds as to any such contract as is alleged by appellant. On the contrary, the testimony of both parties suggests that appellant considered various coverages which appellees proposed to her on other occasions and rejected certain recommended coverages. We can find no basis in the record for concluding that appellant has a viable cause of action for a breach of contract.

For the foregoing reasons the judgment of the trial court is affirmed.

EUBANK, P. J., and O'CONNOR, J., concur.