Charles LOUWAGIE, Appellant,

v.

STATE FARM FIRE AND CASUALTY
COMPANY, et al., Respondents.

No. C6–86–1201.

Court of Appeals of Minnesota.

Dec. 9, 1986.
Review Denied Feb. 13, 1987.

Steven D. Emmings, Carey and Em-
mings, Ltd. Fairfax, for appellant.

Philip R. Reitan, Mankato, for respondents.

Considered and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant Charles Louwagie is a farmer in Lyon County. On September 20, 1983, Thomas Noram, Louwagie's full-time hired hand, was injured in a farming accident. The State of Minnesota Special Compensation Fund paid Noram's workers' compensation claim because Louwagie did not carry workers' compensation insurance. The Fund brought an action against Louwagie to recover the sums paid to Noram. Louwagie brought this action against respondents State Farm Fire and Casualty Insurance and Robert Aufenthie, Louwagie's insurance agent, alleging negligence and seeking indemnity on the claim of the Special Compensation Fund and/or reformation of the policy to include workers' compensation insurance. The trial court granted State Farm's and Aufenthie's motions for summary judgment. We reverse and remand for trial.

## FACTS

Since 1947, appellant Charles Louwagie has farmed about 1050 acres of land near Marshall, Minnesota. For more than 20 years, Louwagie has purchased portions of his insurance coverage from respondent Robert Aufenthie. For the last 10 years, Aufenthie has handled all of Louwagie's insurance needs.

In April of 1978, Aufenthie sold Louwagie a farm-ranch policy from respondent State Farm Fire and Casualty Company. Aufenthie states he discussed the possibility and requirements of workers' compensation insurance coverage with the Louwagies and told them to purchase workers' compensation insurance if they paid more than $4,000 per year in wages. Neither of the Louwagies recalls Aufenthie's statement regarding workers' compensation insurance.

Neither of the Louwagies made an affirmative request to purchase workers' compensation insurance. Prior to the accident, Louwagie was aware that he did not have workers' compensation insurance; however, he was unsure what workers' compensation was and unaware that he needed that coverage. He thought any injuries were covered by the one million dollar umbrella policy or the farm-ranch insurance.

Louwagie stated in his deposition, "I'm a farmer. For accounting work I have a CPA. Insurance I go to an insurance man. I have an attorney. [I a]m too busy a man to remember all these details. That's why I have people doing it. [To] run a farm operation as big as I do, you can't do it. You have to have other people doing it for you."

Similarly, Mrs. Louwagie was confused about workers' compensation insurance. She thought workers' compensation was a state fund maintained through payroll deductions. She asked her accountant whether she should obtain workers' compensation. The accountant advised Mrs. Louwagie to "stay away" from workers' compensation because it was too expensive.

Aufenthie met frequently with the Louwagies to evaluate their insurance needs. At least half of Aufenthie's business involved providing insurance for farmers. Aufenthie knew of Louwagie's lack of sophistication in insurance matters, as illustrated by Louwagie's purchase of almost every coverage Aufenthie recommended, except one life insurance policy. Louwagie purchased a farm-ranch policy covering the farming operation and three building sites, policies insuring all the vehicles, medical insurance, and a liability umbrella. Louwagie alleges that Aufenthie assured him that he was completely insured. Aufenthie admits he never approached the Louwagies about the purchase of workers' compensation insurance after that first date in April 1978, even though he knew Louwagies

hired nonfamily help and maintained a trailer house on their property for the hired hands' use. Specifically, in 1980, Aufenthie became informed that Steven Carrow, Louwagie's son-in-law, was working full-time as a hired farm hand on Louwagie's farm. Aufenthie did not inquire and was not told the amount of wages Carrow was receiving from the farm operation. Louwagie did not inform Aufenthie about other hired hands and the wages they were receiving.

On September 20, 1983, Thomas Noram was working as a hired hand for Louwagie and was injured in a farming accident. The Louwagies' farm-ranch policy had been renewed automatically over the years and was in effect on the date of the accident. Louwagie filed a claim for Noram's injury, but State Farm denied the claim because the farm-ranch policy excluded workers' compensation coverage.

The Minnesota Special Compensation Fund paid Noram's medical bills and disability benefits, but it later brought suit against Louwagie seeking reimbursement for workers' compensation paid to Noram.

On May 2, 1985, Louwagie brought this declaratory judgment action seeking indemnity from State Farm and/or reformation of its farm liability policy to include workers' compensation coverage. On April 26, 1986, the trial court granted State Farm's and Aufenthie's motion for summary judgment. The trial court held that Aufenthie had no duty to inquire about a change in circumstances of the insured when circumstances led him to believe that insurance coverage previously provided was now inadequate. The trial court did not address the agent's affirmative duty to inform its insured of the necessary insurance coverage in the first instance, stating that Aufenthie offered workers' compensation insurance to Louwagie in their first meeting.

## ISSUES

1. Did the trial court err in holding that respondents did not breach their duty to appellant in failing to recommend, or to inquire into appellant's need for, workers' compensation coverage?

2. Did the trial court err in finding that no genuine issues of material fact existed?

## ANALYSIS

■ 1. An insurance agent has the duty to exercise such reasonable skill and ordinary diligence as may fairly be expected from a reasonably prudent person in his profession or situation in accomplishing the objective of his employment. *Johnson v. Farmers & Merchants State Bank of Balaton,* 320 N.W.2d 892, 898 (Minn.1982); 3 G. Couch, *Cyclopedia of Insurance Law* § 25.37, at 336 (rev. ed. 1984). This duty requires an agent to carry out the express requests of an insured. *Id.* Respondents argue, however, that this duty does not require an insurance agent to inform his prospective insured of coverages not specifically requested by the insured.

■ Generally, an insurance consumer is responsible to educate himself concerning matters of insurance coverage. *Nowell v. Dawn Leavitt Agency, Inc.,* 127 Ariz. 48, 51, 617 P.2d 1164, 1167 (Ct.App.1980); *see* 16A J. Appleman, *Insurance Law & Practice* § 8874.35, at 368 & n. 4 (rev. ed. 1981). However, an insurance agent's omission to inform an insured may constitute negligence when there is a duty to act affirmatively. *See Ruberg v. Skelly Oil Co.,* 297 N.W.2d 746, 750 (Minn.1980).

In establishing a standard of care for affirmative duties of an insurance agent, the Minnesota Supreme Court has implicitly recognized there may be an affirmative duty to inform an insured of gaps in insurance coverage. *See Atwater Creamery Co. v. Western National Mutual Insurance Co.,* 366 N.W.2d 271, 279 (Minn.1985).

In *Johnson v. Urie,* 394 N.W.2d 846 (Minn.Ct.App.1986), this court noted that despite the legislature's repeal of the provision requiring insurers to offer the optional underinsured motorist insurance coverage, the general common law duties of insurers and insurance agents remain. This court held the agent may accept the burden of

deciding for the insured both the type and amount of coverage to be provided, giving rise to a common law duty to inform the insured of necessary coverage.[1] *Id.* (citing *Collegiate Manufacturing Co. v. McDowell's Agency, Inc.,* 200 N.W.2d 854, 859 (Iowa 1972)).

The Minnesota cases cited by the parties and the trial court address the issue of whether an insurance agent has a duty to inquire when facts lead him to believe a change of circumstances renders the insurance previously sold to the insured inappropriate. *E.g., Kashmark v. Western Insurance Co.,* 344 N.W.2d 844 (Minn.1984); *Tollefson v. American Family Insurance Co.,* 302 Minn. 1, 226 N.W.2d 280 (1974). These cases are distinguishable because a question of fact existed here as to whether Aufenthie initially sold appropriate coverage or offered workers' compensation to the Louwagies at all. Consequently, although Minnesota courts have held an agent does not have an on-going duty to inquire of the insured to ascertain that previously-provided coverage is still appropriate, *Kashmark,* 344 N.W.2d at 848; *Tollefson,* 302 Minn. at 7, 226 N.W.2d at 283, the Minnesota courts have not extinguished the agent's duty to initially inform the insured of the appropriate coverage.

2. Whether a common law duty has, in fact, arisen and whether that duty has been breached are factual questions, dependent upon the circumstances of each case. *Johnson,* 394 N.W.2d 846 (citing *Atwater Creamery Co.,* 366 N.W.2d at 279). Summary judgment is inappropriate where a resolution of the motion requires factual conclusions usually drawn by a jury. *Id.* (citing *Hedlund v. Hedlund,* 371 N.W.2d 232, 236 (Minn.Ct.App.1985)).

The trial court erroneously states in its memorandum that "the facts giving rise to the inquiry duty clearly occurred *after* the parties' insurance relationship had been es-

tablished. When first told about the workers' comp insurance plaintiff did not want it or need it." (Emphasis in original.)

The trial court assumed that Aufenthie did tell Louwagie about the workers' compensation and that Louwagies did not need workers' compensation insurance. Both of the assumptions are questions of fact unresolved by the depositions. With regard to whether Aufenthie informed Louwagie of the availability of workers' compensation, Aufenthie suggests he did inform the Louwagies of the need for insurance. Neither of the Louwagies recalls such a conversation.

Second, a question of fact exists as to whether Louwagie needed workers' compensation insurance at the time of the first meeting with Aufenthie in April 1978. Aufenthie alleges that he told Louwagies that workers' compensation insurance was appropriate if they paid over $4,000 in cash wages per year. Aufenthie misstated the law. In April 1978, a farmer needed to supply workers' compensation coverage if he had paid out over *$2,000* in cash wages in the *preceding* calendar year to nonfamily members. Minn.Stat. §§ 176.011, subd. 11a and 176.021, subd. 1 (1978) (emphasis added). Louwagies had paid approximately $3,300 in cash wages the previous year. It is unclear whether that money was paid to family, nonfamily, or a combination of the two. If Aufenthie did indeed recommend workers' compensation insurance to Louwagie as he alleges, his misstatement of the law could have been the cause of Louwagie's refusal to purchase the policy. Certainly, if an insurance broker has a duty to volunteer advice to a client, he has a duty to render correct advice. *See Seascape of Hickory Point Condominium Association v. Associated Insurance Services, Inc.,* 443 So.2d 488, 490 (Fla.Dist.Ct. App.1984).

---

**1.** This court is in keeping with other jurisdictions in holding that an agent may create a fiduciary duty to affirmatively advise an insured of the necessary coverage or to advise and inform potential clients of gaps coverage. *E.g.,*

*Hardt v. Brink,* 192 F.Supp. 879, 881 (W.D.Wash. 1961); *Nowell,* 127 Ariz. at 51–52, 617 P.2d at 1167; *Sobotor v. Prudential Property & Casualty Insurance Co.,* 200 N.J.Super. 333, 341, 491 A.2d 737, 739–40 (App.Div.1984).

Third, a factual issue exists as to whether Louwagie relied on Aufenthie to provide information concerning gaps in his coverage. This would depend on Louwagie's knowledge and background in procuring insurance coverage for his farm, the inference of fiduciary relationship based on the length of the relationship between the parties, and Louwagie's actual reliance. *See, e.g., Sobotor,* 200 N.J.Super. at 342–43, 491 A.2d at 741; *Norwell,* 127 Ariz. at 51, 617 P.2d at 1167; *European Bakers, Ltd. v. Holman,* 177 Ga.App. 172, 175, 338 S.E.2d 702, 705 (1985).

## DECISION

The trial court erred by granting summary judgment when genuine issues of material fact existed in determining whether respondent had an affirmative duty to inform appellant of gaps in insurance coverage.

Reversed and remanded for trial.