Adeline BORN, as Personal Representative of the Estate of Benjamin Born and Adeline Born, Individually, Respondent,

v.

MEDICO LIFE INSURANCE COMPANY, Appellant (C7–88–191), Respondent (C1–88–221, C6–88–408),

Mid America Health and Life Services, Inc., Respondent (C7–88–191, C6–88–408), Appellant (C1–88–221),

Don Reynolds, Respondent (C7–88–191, C1–88–221), Appellant (C6–88–408).

Nos. C7–88–191, C1–88–221 and C6–88–408.

Court of Appeals of Minnesota.

Aug. 30, 1988.

Review Denied Nov. 16, 1988.

Keith A. Hanson, Fetterly & Gordon, P.A., Minneapolis, for Adeline Born.

Robert E. Salmon, W.D. Flaskamp, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Medico Life Ins. Co.

Dennis L. Briguet, Dennis L. Briguet and Associates, West St. Paul, for Mid America Health and Life Services, Inc.

Don Reynolds, Shoreview, pro se.

Heard, considered and decided by RANDALL, P.J., and PARKER and MULALLY,* JJ.

## OPINION

EDWARD D. MULALLY, Judge.

Don Reynolds, Mid America Health and Life Services, Inc., and Medico Life Insurance Co. appeal from judgment granted pursuant to an insurance negligence and breach of contract action and also from denial of motions for judgment notwithstanding the verdict, remittitur and new trial.

Appellants assert that the evidence is insufficient to support the jury's verdict of negligence, intentional infliction of emotional distress, waiver of forfeiture and punitive damages. We agree that the evidence is insufficient to sustain a verdict of negligence, intentional infliction of emo-

tional distress and punitive damages. However, we find the evidence sufficient to support appellants' waiver of forfeiture. We reverse in part; affirm in part.

## FACTS

In December 1983 Benjamin Born purchased a medicare supplemental insurance policy [1] offered by Medico Life Insurance Company. Born purchased the policy after consulting with Don Reynolds, an insurance agent working for Mid America Health and Life Services, Inc. At the time the Medico policy was purchased, Benjamin Born already had medicare supplemental coverage under a policy issued by United American Insurance Company. Reynolds had also sold the United policy to Born. [2]

As part of the application process, Mr. Born was required to orally give a complete health history. In addition, Reynolds asked the Borns specific questions relating to Benjamin's preexisting medical conditions and prior or continuing medical treatment. Adeline Born answered all questions, stating that Mr. Born had no preexisting medical problems and was in good health. Mrs. Born's answers were recorded on the policy application by Reynolds. After completion of the application, Benjamin Born was given the application for review and signature.

Reynolds testified that prior to filling out the application, he explained the importance of answering all health questions honestly and thoroughly. He stated that he told the Borns that failure to give honest answers could result in increased premiums or policy recission. Benjamin Born signed the application verifying all answers as true and correct and the application was forwarded to Medico through Mid America. A policy was issued effective December 3, 1983.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

1. Medicare supplemental insurance policies cover specific excess medical and nursing care expenses not reimbursible by the federal Medicare program. Minn.Stat. ch. 62A (1986) governs

the writing, sale, coverage provisions and processing of such policies.

2. Reynolds, Mid America and its president were licensed by both Medico and United to solicit policy applications, collect premiums and deliver policies.

Immediately after the policy issued, Mr. Born underwent treatment for a malignant tumor on the left kidney. The kidney was removed on December 14, 1983. On December 23, 1983, he suffered a stroke and was transferred from Owatonna City Hospital to St. Lucas Nursing Home where he remained until February 27, 1984. Prostate surgery was performed on February 29, 1984. One week after prostate surgery, Born suffered a second stroke. As a result, he was again transferred to the nursing home where he remained until he died on September 21, 1985.

Benjamin Born submitted his first health claim under the Medico policy in February 1984. Since the claim was received within the six-month waiting period for preexisting conditions,[3] Medico requested medical authorization prior to payment. Medico had not conducted a prior medical investigation because no health concerns were listed on his application.

The records received during the medical authorization indicated the existence of several preexisting medical problems and the claim was transferred to underwriting for review. Upon further investigation, underwriting discovered a history of heart disease, degenerative arthritis, and urinary system disorders. Medico testified that had these three medical problems been disclosed, the policy would not have been issued. Consequently, the policy was rescinded and a full premium refund and explanation was sent to Benjamin Born on May 11, 1984.

The Borns did not cash the premium refund. On July 17, 1984, the Borns received a computer generated letter from Medico stating that the six-month waiting period had expired and Mr. Born was now covered for preexisting conditions. In addition, Mrs. Born testified that she received other forms relating to claims at various times during the claim dispute.

Medico states it notified and explained the policy rescission to Adeline on several occasions, both before and after the erroneous coverage letter was sent. Medico refused to pay any claims, alleging the insurance policy was null and void. During the time Medico was disputing Benjamin's claims, Benjamin's initial supplemental Medicare policy lapsed. Due to his critical health condition, he was unable to renew the United policy.

Adeline Born, as personal representative of her husband's estate, brought suit against Reynolds, Mid America and Medico, alleging breach of contract and separate claims of negligence[4] and waiver of forfeiture. Acting on her own behalf she brought a claim of intentional infliction of emotional distress.

On October 5, 1987, the jury found by special verdict that:

1. Mr. Born materially misrepresented his health history;[5]

---

3. Medico's policy states:

 Pre-existing conditions WILL be covered during the first 6 months after the Policy Date if they were not diagnosed or treated during the 90 days immediately preceding the Policy Date.

 Pre-existing conditions will NOT be covered during the first 6 months after the Policy Date if they were diagnosed or treated during the 90 days immediately preceding the Policy Date.

4. Adeline Born raised two claims of negligence. First, she claims appellants were negligent in not conducting a health investigation upon receipt of Benjamin Born's insurance application; and second, that appellants were negligent in not advising the Borns to maintain the United policy during the six-month waiting period for preexisting conditions. Although Mid America

Health and Life Services, Inc. and Medico Life Insurance Company asserted that the negligence claims stem directly from Reynolds' conduct, the trial court correctly determined that a finding of negligence would be imputed to both companies because Reynolds was acting within the scope of his employment.

 When the company accepts the benefit of the work of a soliciting agent, it cannot thereafter disclaim the agency of the solicitor in the doing of anything necessarily implied in the specific act thus authorized.

 *Dose v. Insurance Co. of Pennsylvania,* 206 Minn. 114, 117, 287 N.W. 866, 868 (1939).

5. Adeline Born has not appealed the jury's finding that her husband materially misrepresented his health history and that the misrepresentation materially increased the risk of loss assumed by Medico.

2. Medico had waived its right to rescind the policy;

3. All parties were causally negligent;

4. Mrs. Born was entitled to $32,701.28 in contract damages;

5. Mrs. Born was entitled to $150,000 for pain and suffering to herself; and that,

6. Mrs. Born was entitled to an aggregate of $100,000 in punitive damages from Mid America and Reynolds.

The trial court reduced Mrs. Born's damages under the comparative fault statute, adopted the jury's findings and issued an order directing judgment on November 2, 1987. Medico, Mid America and Reynolds moved for judgment notwithstanding the verdict, remittitur and new trial. All post-trial motions were denied.

Medico and Mid America appeal from judgment entered pursuant to the November 2, 1987, order and the post-trial judgment. Defendant Reynolds appeals only from the post-trial judgment. All three appeals were consolidated by this court's order.

## ISSUES

1. Is there sufficient factual and legal support to sustain the jury's verdict of negligence?

2. Is there sufficient factual and legal support to sustain the jury's determination that Medico had waived its right to rescind the policy?

3. Is the evidence sufficient to support a finding of intentional infliction of emotional distress?

4. Are defendants entitled to a new trial because the jury verdict was excessive and rendered due to passion and prejudice?

## ANALYSIS

### 1. *Negligence*

■ Appellants [6] assert that respondent failed to establish the requisite standard of care and breach of standard necessary to sustain the jury's finding of negligence. For this reason, appellants assert that the jury verdict should be reversed. We agree.

In reviewing this purely legal question, we must view all the evidence in the light most favorable to the verdict and may not weigh the evidence or judge the credibility of the witnesses.

*Lamb. v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983).

If the evidence is practically conclusive against the verdict or if reasonable minds could reach but one conclusion against the verdict, then that verdict must be overturned.

*Melin v. Johnson*, 387 N.W.2d 230, 232 (Minn.Ct.App.1986).

An insurer has:

[A] duty to exercise such reasonable skill and ordinary diligence as may fairly be expected from a reasonably prudent person in [its] profession or situation * * *.

*Johnson v. Farmers And Merchants State Bank of Balaton*, 320 N.W.2d 892, 898 (Minn.1982); *Louwagie v. State Farm Fire & Casualty Co.*, 397 N.W.2d 567, 569 (Minn.Ct.App.1986). The party claiming negligence "has the burden of establishing a duty on the part of [the insurer], along with establishing the standard of care to be followed by insurer and agent in fulfilling that duty." *Johnson v. Urie*, 394 N.W.2d 846, 849 (Minn.Ct.App.1986), *aff'd*, 405 N.W.2d 887 (Minn.1987).

Respondent asserts two separate claims of negligence. First, she argues that appellants were negligent in not conducting a medical investigation when Benjamin Born submitted his insurance application. And second, respondent contends appellants were negligent in not advising the Borns to maintain Mr. Born's United policy during Medico's six month waiting period for pre-existing condition coverage. To sustain the jury's finding of negligence, the record must show with reasonable certainty that respondent established appellants' duties to

6. Appellants Reynolds, Mid America and Medico consolidated arguments on appeal. All three rely on the brief submitted by Medico. Mid America submitted a supplemental argument, but Reynolds chose not to file an independent brief. Consequently, all issues discussed are reviewed as to all appellants, except where otherwise noted.

conduct a medical investigation and to advise the Borns to maintain the United policy.

[I]f it would be speculative for the factfinder to decide the issue of negligence without having the benefit of expert testimony on the standard of care, the expert testimony is necessary.

*Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271, 279 (Minn.1985).

Respondent presented no expert testimony showing that it is reasonable and accepted custom for insurers to conduct medical investigation upon receipt of applications. In contrast, appellants presented expert witnesses who verified that such a practice is uncommon when the application form unequivocally indicates the applicant to be in good health. Further, even in the absence of expert testimony establishing that pre-policy medical screening is not the industry's norm, the evidence clearly shows that appellants had no reason to question Mr. Born's health.

 Respondent does not dispute the jury's finding that the Borns materially misrepresented Mr. Born's medical condition. Appellants could reasonably rely on the information presented on the application and as such, had no reason to further investigate Benjamin Born's health history. We find respondent failed to meet her burden of establishing appellants' duty to investigate Mr. Born's medical history based on the information presented on the application.

Generally, an insurance consumer is responsible to educate himself concerning matters of insurance coverage. However, an insurance agent's omission to inform an insured [of gaps in coverage] may constitute negligence when there is a duty to act affirmatively.

*Louwagie*, 397 N.W.2d at 569. Whether or not an agent has an affirmative duty to inform the insured of possible gaps in coverage depends on the relationship of the parties, specific requests of the insured, and the professional judgment of the agent. *Atwater*, 366 N.W.2d at 278–79; *Runia v. Marguth Agency, Inc.*, 420 N.W.

2d 641, 643–44 (Minn.Ct.App.1988); *Campbell v. Valley State Agency*, 407 N.W.2d 109, 112 (Minn.Ct.App.1987); *Louwagie*, 397 N.W.2d at 569–70. Appellant Reynolds had only met with the Borns on two occasions. First, when he sold them the United policy and again when he sold them the Medico policy. He did not have what could be characterized as an intimate or longstanding relationship with the Borns. *See, e.g., Atwater*, 366 N.W.2d at 271–72 (30-year relationship on which insured relied).

The record also shows that the only request made by the Borns was for increased coverage. No evidence was presented to show the Borns requested information regarding maintenance of the United policy.

Whether Reynolds reasonably exercised his professional judgment in not advising the Borns to maintain the United policy again derives from the industry standard. Although Reynolds did not expressly advise the Borns to maintain the United policy, he clearly warned of the penalties for misrepresentation and the effect of the six-month waiting period. Reynolds had no reason to doubt that Mr. Born's health was satisfactory. We find that respondent failed to establish that appellants had a duty, under the circumstances, to advise the Borns to maintain the United policy.

### 2. *Intentional Infliction of Emotional Distress*

 Medico argues the respondent failed to establish the requisite elements of intentional infliction of emotional distress. We agree.

The basis of respondent's claim is Medico's alleged refusal to pay medical benefits.

To prove [her] claim of the independent tort of an intentional infliction of emotional distress, [respondent] must show: (1) extreme and outrageous conduct by defendant [Medico]; (2) conduct that is intentional or reckless; (3) the conduct that caused the emotional distress; and (4) severe emotional distress.

*Saltou v. Dependable Insurance Co., Inc.*, 394 N.W.2d 629, 632 (Minn.Ct.App.1986) (citing *Hubbard v. United Press Interna-*

*tional, Inc.,* 330 N.W.2d 428, 439 (Minn. 1983).

There is no evidence supporting respondent's allegation that Medico's conduct was extreme and outrageous. The Borns materially misrepresented Benjamin Born's medical status and Medico had the right to rescind the policy. Minn.Stat. § 60A.08 (1984).

Furthermore, respondent failed to present medical testimony to substantiate any concrete physical manifestations of physical distress. Therefore, we find respondent failed to meet her burden of proving intentional infliction of emotional distress, and we reverse the jury's award of extra-contractual damages for pain and suffering.

### 3. *Waiver*

 Appellant Medico argues that the evidence is insufficient to support a jury verdict finding Medico waived its right to rescind the policy. In reviewing the sufficiency of the evidence,

> [a]ll evidence must be considered in light most favorable to the prevailing party, and a verdict must be sustained unless it is manifestly and palpably contrary to the evidence.

*Cobb v. Aetna Life Insurance,* 274 N.W.2d 911, 913–14 (Minn.1979).

Waiver is the intentional and consensual relinquishment of a known right. However, "intent and consent may be inferred from conduct." *Seavey v. Erickson,* 244 Minn. 232, 236, 69 N.W.2d 889, 895 (1955).

The record shows that Medico sent a letter dated July 17, 1984, which stated that Benjamin Born was covered for preexisting conditions. We find this letter sufficient to support the jury's verdict. For this reason, Medico is liable for $19,050.28 in contract damages.

### 4. *Punitive Damage Award*

Punitive damages are appropriate only "upon clear and convincing evidence that the acts of defendant show a willful indifference to the rights or safety of others." Minn.Stat. § 549.20, subd. 1 (1986).

The impetus for awarding punitive damages stems from the jury's finding of negligence and intentional infliction of emotional distress. As discussed above, there is no basis for these findings, and thus there is no basis for an award of punitive damages. The only proper damage award is $19,050.28, the amount the jury determined as contract damages.

### DECISION

Respondent, individually, failed to meet her burden of proof in establishing appellants' standard of care and the elements necessary to show intentional infliction of emotional distress. Consequently, the only damages allowable are damages associated with breach of contract. Respondent, as personal representative of the estate of Benjamin Born, is properly awarded damages against Medico for breach of contract. Appellant Medico is obligated to pay the claims in accordance with the policy.

AFFIRMED IN PART AND REVERSED IN PART.