# IN THE COURT OF APPEALS OF IOWA

No. 14-1602
Filed January 27, 2016

**3140 LLC,**
    Plaintiff-Appellant,

**vs.**

**STATE CENTRAL FINANCIAL SERVICES, INC.**
**d/b/a STATE CENTRAL INSURANCE,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Lee (South) County, John M.

Wright, Judge.

A limited liability corporation appeals from entry of summary judgment in

favor of its insurer. **AFFIRMED.**

Ross Braden of the Law Office of Ross Braden, Fort Madison,and Curtis

Dial of Law Office of Curtis Dial, Keokuk, for appellant.

Joseph Wharton and Joseph M. Barron of Peddicord, Wharton, Spencer,

Hook, Barron & Wegman, L.L.P., West Des Moines, for appellee.

Heard by Danilson, C.J., and Vogel and Potterfield, JJ.

**POTTERFIELD, Judge.**

The insured, 3140 LLC, claims its insurance agent, State Central Financial Services, Inc., doing business as State Central Insurance (State Central), was negligent in "providing false information to [3140 LLC] regarding the requirement to have a working sprinkler system." The district court granted State Central summary judgment, and 3140 LLC appeals.

**I. Background Facts and Proceedings.**

Leon Ewart and Rick Greenfield are two of the principals or owners of 3140 LLC, which purchased a parcel of real estate located at 3140 Plank Road in Keokuk, Lee County, Iowa, in 2004. A former nursing home is located on the land.

Prior to September of 2007, the real estate and building were insured through United Fire and Casualty Company. This policy had been sold to 3140 LLC by Lofton, Stebbings & Sohl Insurance in Keokuk, Iowa. This insurance policy was cancelled or non-renewed by the insurance company. The building became uninsured after June 2007. The real estate was subject to a mortgage by State Central Bank. State Central Bank, upon learning of the cancellation of insurance, demanded that 3140 LLC provide property damage coverage for the building located on the real estate in the amount of the mortgage.

3140 LLC then began efforts to obtain successor insurance coverage. Ewart and Greenfield were the individuals who participated in the efforts to obtain insurance coverage. The building located on the property could not be insured by a standard insurance carrier doing business in the state of Iowa. As a result,

it was necessary for 3140 LLC to pursue insurance coverage in the secondary market through an insurance broker.

3140 LLC sought a quote for insurance coverage from State Central Insurance, an independent insurance company. 3140 LLC first dealt with State Central contact Cory Grisham, and later with Frank O'Connor.

State Central, through insurance broker M. J. Kelly, obtained a quote from Mount Vernon Insurance Company. 3140 LLC requested that insurance coverage be bound and that they receive a written binder for insurance on the building from Mount Vernon. An insurance policy was issued by Mount Vernon for the building. The policy had an exclusion for damage due to sprinkler leakage. Ewart acknowledges receiving a copy of the policy, reading the policy, and being comfortable with the coverage it provided. No objection to the coverage provided in the policy was ever raised by 3140 LLC. 3140 LLC never specifically asked any of the insurance agents or representatives to obtain sprinkler leakage coverage.

A memo from Mount Vernon to insurance broker M.J. Kelly Company dated November 5, 2007, reported the results of a loss control survey for the 3140 LLC account. It included recommendations to minimize the insured's exposure to loss. Included within this memo was the following language: "The sprinkler system main drain should be tested regularly to comply with NFPA 25. This test shows that water supply is available at the base of riser, and consecutive similar tests prove an unchanging supply. Main drain test was not witnessed at the survey, last tested 2004."

On November 19, 2007, O'Connor from State Central wrote a letter to M.J. Kelly Company, which included the following: "With respect to the fire extinguishers and sprinkler system testing, you've indicated these could be ignored since the building is rated as a vacant structure."

State Central received a memo from M.J. Kelly Company on November 19, 2007, which included the following language: "I want to clarify that I have never indicated that the fire extinguishers and sprinkler system testing could be disregarded. I'm confused as to where this indication came from as I have not spoken to anyone regarding the recommendations on this account."

O'Connor wrote a letter to Greenfield on November 26, 2007, that included the following:

> In reviewing my letter of November 19th to you, I failed to indicate that the recommendations made by the Life Safety Inspector excused you from having fire extinguishers because the property was vacant, but they still wanted to have the sprinkler system main drain tested regularly to comply with federal regulations. The last test was in 2004, which would indicate that it has not been tested in recent times. This is an engineering requirement that is mandatory.

The insurance policy issued in 2007 was renewed in September of 2008. No substantial changes to the policy or coverage were contained in the renewed policy. An October 9, 2008 letter from State Central employee O'Connor to Ewart listed the coverage provided for in the renewed insurance policy. Included in the letter were the following sentences:

> The basic form only provides coverage for fire, lightning, explosion, wind or hail, smoke, aircraft or vehicle, riot, vandalism, sprinkler leakage, sinkhole collapse and volcanic action all as defined and limited within the policy. In addition, the policy contains several exclusions including earthquake and flood. Please read Form CP1010 carefully to understand the limitations and exclusions on the property side of the policy.

In October 2008, Ewart and Greenfield discussed with Dan Logan at State Central the 3140 LLC's desire to drain the sprinkler system and vacate the building. Greenfield testified in the first trial that Logan then called O'Connor:

> Q. Can you tell me what—what Mr. O'Connor said, as far as whether the pipes could be drained? A. He just said he was going to check on it. We did not have resolution that day as to whether we could or couldn't.
> Q. Did you ever get resolution as to whether you could or could not drain the pipes? A. Yeah, I think it was within a week after that that we received a thing telling us that we could not because that would cancel our fire insurance because we had to—if I remember correctly, we had to have the sprinkler system checked, the pressure checked on it, had to have an inspection or whatever of the sprinkler system in order to keep our insurance and if you drained the pipes, of course, you wouldn't pass that inspection. And so, therefore, you could not drain the pipes.

Upon further questioning, Greenfield explains he is referring to the November 26, 2007 letter from O'Connor quoted above and "a similar one a year later."

> Q. Based upon the letters that you had and the conversation that you had, did you determine that you could not turn off the water to the building? A. These two letters, of course, kind of spelled it out that, obviously, if we drained the water, we wouldn't—we wouldn't pass this test and then they wouldn't cover our insurance. And then we went through that winter, calculated how much it cost us to heat that thing; and then I think that's when we all had the discussion that, hey, we just need to—we just need to drain the water so then we don't have to heat it and we would incur less risk of that thing—you know, of those freezing up and that's when we readdressed it.
> . . . .
> Q. And did you choose not to [drain the water pipes] then based upon the representation from Mr. O'Connor that they could not be drained? A. Well, yeah, yeah, I mean, if we didn't think—we thought we had to keep them in there just to maintain insurance.

On December 24, 2008, it was discovered the building owned by 3140 LLC incurred damages as a result of water pipes and sprinkler system freezing and breaking. 3140 LLC made a claim for the damages with the insurance

company. The claim was denied pursuant to the policy exclusion for damage due to sprinkler leakage.

On February 17, 2009, O'Connor sent a letter to 3140 LLC stating, "I do not find a protective safeguard endorsement which would indicate that for the coverage to apply, the sprinkler system must be operational."

On October 12, 2009, 3140 LLC filed a petition at law alleging claims of negligence and negligent misrepresentation against State Central.[1]

**2011 Summary judgment.** On April 13, 2011, the district court granted summary judgment to State Central as to the claim of negligence in State Central's failing to provide necessary or requested coverage. The court wrote:

> There is nothing in the record to indicate that anyone from 3140 told their insurance agent, Mr. O'Connor or Mr. Grisham, that they wanted to have coverage for water damage caused by broken pipes or a sprinkler system. Consequently, there would have been no breach in the duty of care owed by the insurance agent in failing to have an insurance policy providing such coverage. This is because there is no evidence of an expanded agency agreement, such as O'Connor or Grisham holding themselves out to be an insurance specialist or receiving additional compensation apart from the premiums paid.
> The difficulty in the case arose when State Central, admittedly because of information provided to it by the insurance broker, notified the insured that they must test their sprinkler system to [e]nsure that it was working. That would lead a reasonable person to believe that the sprinkler system must be operational in order for the policy to be effective. A working sprinkler system would have prevented the pipes in the building being drained in the winter time, to allow 3140 to turn off the heat, as they had wanted to do. The testimony of Ewart and Greenfield are that they relied upon this information to make a decision to not drain the pipes. If they had drained the pipes as they had wanted to, there would never have been the damage caused by a sprinkler system or pipe failure in December 2008. This could lead a

---

[1] Other claims and other defendants were involved and amended petitions were filed subsequently. This appeal, however, deals only with the claims of negligence and negligent misrepresentation against State Central.

reasonable person to the conclusion that if 3140 [LLC] had never been given the incorrect information that the sprinkler system must be operational, there never would have been the water damage to the building.

Relying on principles announced in *Langwith v. American National General Insurance Co.* 793 N.W.2d 215, 221 (Iowa 2010), the court found that whether State Central told 3140 LLC that the sprinkler system had to be working and 3140 LLC's "interpretation of what they were told by State Central constitutes a substantial and material fact in dispute which defeats entry of summary judgment on the negligence and negligent misrepresentation claims that State Central provided inaccurate information about the need for a working sprinkler system."

**Jury trial.** A jury trial resulted in a verdict for 3140 LLC in the amount of $351,784. However, on February 8, 2012, the trial court granted State Central's motion for new trial "on all issues." The court determined the verdict was contrary to the jury instruction in that the "jury awarded damages for restoration, which was substantially greater than diminution of value." The court found, "The substantial evidence presented during trial of this case was that diminution in value would result in damages of $115,000 at most, and arguably, zero." The trial court also concluded it had inadequately instructed the jury in not providing a definition of fair market value and "should not have instructed on the specification of negligence that '[T]he Defendant was negligent in: (a) providing inaccurate information that the insurance policy covered damages caused by leakage from the sprinkler system.'" 3140 LLC appealed.

**Prior appeal.** This court reviewed the district court's granting the motion for a new trial. *3140 LLC v. State Cent. Fin. Servs., Inc.*, No. 12-0434, 2013 WL

535597, at *1 (Iowa Ct. App. Feb. 13, 2013). We concluded the district court erred in granting a new trial based upon jury instruction where there had been no objections made to the instructions. *Id.* at *3 ("Our only question on appeal is whether the jury's verdict conformed with the evidence and the law as instructed."). We agreed with the district court that the damages awarded were contrary to the instruction given. *Id.* at *4. Finding the damages were excessive—but not a result of passion or prejudice—we conditionally affirmed, stating:

> We conditionally affirm the trial court's grant of a new trial for excessive damages. If, within fifteen days of the issuance of procedendo, the plaintiff files with the clerk of the district court a remittitur of all damages in excess of $69,000 [$115,000 reduced by forty percent for contributory negligence], the judgment shall be reversed. If the plaintiff does not file a remittitur, the district court is affirmed and a new trial is granted.

*Id.* at *5.

3140 LLC did not file a remittitur, and a new trial was ordered.

**Proceedings following first appeal.** State Central was granted permission to extend deadlines to file dispositive motions, and filed a motion for summary judgment on March 5, 2014. In its motion for summary judgment, State Central asserted the *Langwith* decision was abrogated by a subsequent amendment to Iowa Code section 522B.11(7), and the supreme court had "since decided *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91 (Iowa 2012)[,] which placed strict limitations on a negligent misrepresentation claim against an insurance agent." It also contended the district court had ruled that only the negligent misrepresentation claim should have gone to the jury and the new trial was therefore limited to negligent misrepresentation.

3140 LLC resisted, asserting, "In the latest motion for summary judgment the Defendant claims that the Court must grant summary judgment in regard to the claims of negligence and negligent misrepresentation. This is the same argument raised in the previous motion for summary judgment." State Central was barred from raising the issue because the argument had been rejected before the previous trial and not raised on appeal. 3140 LLC asserted there were questions of fact, including whether State Central "owe[d] a duty to the Plaintiff which the Defendant breached," "falsely informed the Plaintiff that the sprinkler system had to be operational," "negligently misrepresented to the Plaintiff that the sprinkler system had to be operational and could not be drained," and "negligently represented to the Plaintiff that the Plaintiff was covered under the policy for sprinkler leakage, when in fact they were not." 3140 LLC also stated, "It should be pointed out that in the motion for summary judgment the Defendant really raises no questions of fact. The motion is simply the same legal arguments which have been made previously on the first motion for summary judgment and denied."

**2014 Summary judgment.** On August 28, 2014, the district court noted Iowa Code section 522B.11(7)(c) (2013) provides that "an insurance producer, while acting within the scope and course of the license provided by this chapter is not in the business of supplying information to others unless the requirements of paragraph 'a' relating to expanded duties and responsibilities are met." Paragraph 'a' reads:

> Unless an insurance producer holds oneself out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commissions

> paid by an insurer, the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in *Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457 (Iowa 1984).

The district court determined there was nothing in the record indicating State Central held itself out to 3140 LLC as an insurance specialist, consultant, or counselor, which "shields the Defendant from liability in this case." The court granted summary judgment to State Central.

**Motion to reconsider.** On August 29, 2014, 3140 LLC filed a motion to reconsider, asserting State Central had not sought to amend its summary judgment motion to assert section 522B.11. State Central resisted the motion to reconsider on September 4, stating that during the hearing on the motion for summary judgment the defendant had specifically discussed House File 398 (now Iowa Code § 522B.11(7)(c)), which had been passed by the legislature and was awaiting the governor's signature at that time. The resistance also noted that following the hearing, defendant's counsel notified the court by letter dated June 2, 2014—with a copy to plaintiff's counsel—that the governor had signed the bill. In any event, State Central argued in support of its motion for summary judgment that there was no duty owed by the defendant under the facts of this case because there was no expanded agency relationship under existing case law and Iowa Code § 522B.11(7), and with or without the addition of subparagraph (c) to this statute, summary judgment was appropriate on this ground.

3140 LLC filed an appeal on September 26, 2014. No ruling on its motion to reconsider appears in the record, and no motion was filed pursuant to Iowa Rule of Civil Procedure 1.904(2).

## II. Scope and Standard of Review.

We review a district court's grant of summary judgment for correction of errors at law. Iowa R. App. P. 6.907; *Thompson v. Kaczinski*, 774 N.W.2d 829, 832 (Iowa 2009). Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

## III. Discussion.

On appeal, 3140 LLC contends the district court erred in granting summary judgment to State Central because the court (1) did not view the evidence in the light most favorable to the non-moving party, (2) disregarded the testimony of Rick Greenfield, (3) "did not understand the ruling . . . granting the motion for new trial," and (4) considered a ground not raised in the motion for summary judgment.

With regard to the third contention, we simply note that following the first trial, the district court granted a new trial on "all issues," which that court determined involved whether State Central provided inaccurate information about the need for a working sprinkler system. State Central argues that it had no duty to advise the insurance customer unless there existed an expanded agency relationship as set out in *Sandbulte*.

The difficulty presented to this court arises because an insurance agent's duties to its clients have expanded and contracted over time. As stated in *Collegiate Manufacturing Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854, 857 (Iowa 1972): "

> Generally an agent owes his principal the use of such skill as is required to accomplish the object of his employment. If he fails to exercise reasonable care, diligence, and judgment in this task, he is liable to his principal for any loss or damage occasioned thereby.
> This general rule may be altered, either to limit or enlarge the ordinary duties, by agreement of the parties.

(Citations omitted.)

In *Sandbulte*, plaintiff insureds asserted a claim that their insurance agents had breached an implied expanded agency agreement to "advise plaintiffs of the extent of their liability insurance coverage, and suggest and implement for plaintiffs proper, complete, and adequate liability coverage." *See* 343 N.W.2d at 461. The *Sandbulte* court noted the "general duty is the duty to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Id.* at 464. The plaintiffs' action was based on language in *Collegiate*, that "there *could* have been delegated to defendant [insurance agent] the burden of deciding for plaintiff both the type and amount of insurance to be provided." *Id.* at 461. However,

> An expanded agency agreement, arrangement or relationship, sufficient to require a greater duty from the agent than the general duty, generally exists when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured. *Hardt v. Brink*, 192 F. Supp. 879, 880-81 (W.D. Wash. 1961) (agent assumed a duty to advise plaintiff as to his insurance needs when such agent held himself out to be a highly skilled insurance advisor and insured relied upon him as such); *Nowell v. Dawn-Leavitt Agency, Inc.*, 617 P.2d 1164, 1168

(Ariz. Ct. App. 1980) (imposition of liability for agent's failure to advise client of need for coverage should be confined to situations where insurance counselor is receiving consideration for his services apart from premiums to be paid by insured or there is a long-established relationship of entrustment between insurance counselor or agent and client from which it clearly appears that the counselor appreciated that there was a duty to take the initiative in giving comprehensive advice to his client on insurance matters); 16A Appleman, *Insurance Law & Practice* § 8836, at 64–66 (1981) ("Ordinarily, of course, an insurance agent assumes only those duties normally found in an agency relationship . . . and he assumes no duty to advise the insured merely by such relationship. However, where an agent holds himself out as a consultant and counselor, he does have a duty to advise the insured as to his insurance needs, particularly where such needs have been brought to the agent's attention. And in so doing, he may be held to a higher standard of care than that required of the ordinary agent since he is acting as a specialist. Accordingly, the agent may be liable to an insured for the damage suffered by his failing to inform him as to a potential source of loss and by his failing to recommend insurance therefor.").

*Id.* at 464–65.

This was the state of the law with respect to an insurance agent's duties to its clients at the time of the conduct complained of here in 2008. Thus, State Central had the duty "to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Id.* at 464.

Then, in 2010, our supreme court "abandon[ed] . . . the restrictive requirements for an expanded agency duty" and overruled *Sandbulte. Langwith*, 793 N.W.2d at 224. In *Langwith*, the court held "that it is for the fact finder to determine, based on a consideration of all the circumstances, the agreement of the parties with respect to the service to be rendered by the insurance agent and whether that service was performed with the skill and knowledge normally possessed by insurance agents under like circumstances." 793 N.W.2d at 222.

Consequently, *Langwith* articulated the duty owed by State Central on April 13, 2011—the date on which the district court ruled on the summary judgment prior to the jury trial in this matter. In April 2011, the district court granted summary judgment to State Central as to the claim of negligence in State Central's failing to provide necessary or requested coverage.

But, *Langwith* was legislatively overturned effective July 5, 2011. *See* 2011 Iowa Acts ch. 70, § 45. That legislative action was codified at Iowa Code section 522B.11(7):

> a. Unless an insurance producer holds oneself out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commissions paid by an insurer, the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in *Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457 (Iowa 1984).
> b. The general assembly declares that the holding of *Langwith* . . . is abrogated to the extent that it overrules *Sandbulte* and imposes higher or greater duties and responsibilities on insurance producers than those set forth in *Sandbulte.*

Consequently, the 2010 *Langwith* expansion, which occurred after filing of this suit, was abrogated by the legislative contraction, which was effective July 2011,[2] and the duty owed by State Central to 3140 LLC at the time a new trial was ordered by the district court in March 2012 was the same as at the time the case was filed—and was limited to those duties and responsibilities set forth in *Sandbulte.*

---

[2] The duty owed by State Central was not an issue raised in the first appeal. *See 3140 LLC,* 2013 WL 535597, at *1. Nonetheless, we affirmed the trial court's grant of a new trial (which the trial court stated was to be "on all issues"). *Id.* at *5.

3140 LLC complains that the district court improperly considered section 522B.11(7) because State Central "never raised the issue of Iowa Code section 522B.11 as amended by the legislature after filing and arguing the motion for summary judgment." The record belies this claim.[3] In any event, *Sandbulte* and section 522B.11(7) "address *what* duties an insurance agent owes the insured." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 99 (Iowa 2012). Thus, the district court did not err in looking to section 522B.11(7) to determine whether State Central owed a duty to 3140 LLC when considering the motion for summary judgment.

As stated in *Sandbulte*, State Central had the general duty "to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." 343 N.W.2d at 464. 3140 LLC presented no evidence supporting a finding that State Central held itself out as an insurance specialist, consultant, or counselor, or received compensation for consultation and advice apart from commissions paid by 3140 LLC. In April 2011, even before trial, the district court observed there "is no evidence of an expanded agency agreement, such as O'Connor or Grisham holding themselves out to be an insurance specialist or receiving additional compensation apart from the premiums paid."

---

[3] *See* page ten.

3140 LLC has not raised a genuine issue of fact that State Central assumed a duty beyond the procurement of the coverage.[4] Consequently, the district court did not err in determining State Central was shielded from liability with respect to the claims of negligence or negligent misrepresentation.

We therefore affirm.

**AFFIRMED.**

---

[4] Yet, even under *Langwith*,

> The client bears the burden of proving an agreement to render services beyond the general duty to obtain the coverage requested. In the absence of circumstances indicating the insurance agent has assumed a duty beyond the procurement of the coverage requested by the client, the insurance agent has no obligation to advise a client regarding additional coverage or risk management.

793 N.W.2d at 223 (citations omitted).